Petition of MORAN TRANSP. CORP.

MORAN TRANSP. CORP. v. MELLINO'S ADM'X.

THE MORAN NO. 96.

No. 52, Docket 21747.

United States Court of Appeals Second Circuit.

Argued Nov. 3, 1950.

Decided Nov. 21, 1950.

See also 75 F.Supp. 392.

Alexander & Ash, New York City (Edward Ash and Sidney A. Schwartz, New York City, of counsel), for appellant.

Harry R. Santillo, Brooklyn, N. Y. (Jacquin Frank and Herman B. Gerringer, New York City, of counsel), for appellee.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

FRANK, Circuit Judge.

In Petition of Red Star Barge Line, Inc., 2 Cir., 160 F.2d 436,[1] we interpreted Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520,[2] and Ex parte Green, 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212, to mean that, in a one-claim case, the claimant must be granted permission to prosecute the claim in a state court without conceding the right to limit, provided the claimant conceded the "right to litigate that issue in the federal court," and waived "any claim of *res judicata* relevant to the issue of limited liability and based on any judgment she may obtain in the state court action." [160 F. 2d 438.] In so holding, we relied on the concluding paragraph in Ex parte Green, 286 U.S. at 440, 52 S.Ct. at page 603, 76 L.Ed. 1212: "The district court, however, gave Green until a time fixed to withdraw, in the state court, the issue as to the right to limited liability, in which event the restraining order was not to issue. That court, upon being seasonably advised of the proceeding here and of our disposition of it, will, no doubt, grant further reasonable time to allow Green to elect whether to withdraw the admiralty issue which he has raised in the state court; and the denial of the motion is made without prejudice to such action."

As shown by the district court's opinion, reported in 75 F.Supp. 392, the order of January 20, 1948, modifying the original restraining order of October 16, 1947, was in accord with Red Star Barge Line. In that case, however, there was but a single claim. Moran contends that, upon the filing of Todd's claim, the January 20, 1948, order should have been changed to restore the original order restraining appellee, because, with the filing of the Todd claim, the Red Star Barge Line case ceased to apply, since now there were two claims aggregating a sum in excess of the stipulated value of $31,055. We agree with the district judge that the Red Star Barge Line rule continued to be applicable because appellee filed the priority consent, i. e., that Todd's claim, which would surely be for less than $31,055, should be paid in full out of the fund before anything should be paid on any judgment obtained in appellee's state court suit.

Before Todd filed its claim, Moran had faced litigation with appellee in the state court and—if she there recovered more than the stipulated value of the scow— litigation in the district court as to Moran's right to limitation. In the light of appellee's priority consent, the filing of the Todd claim added but one more item of litigation, i. e., with Todd as to the validity and amount of its claim.[3] Moran argues that this added item of litigation creates a "multiplicity of suits," and that therefore the district court was obliged to restrain appellee and compel her to litigate her claim in the admiralty, without a jury.

We think this argument rests on a misconception of the rights conferred by the statute. The statutory purpose is to exempt the investor from loss in excess of the

1. Followed by the Sixth Circuit in Great Lakes Dredge & Dock Co. v. Lynch, 173 F.2d 281.

2. There the Court, after citing the "saving to suitors" clause of 28 U.S.C.A. § 41 (3) [1948 Revised Judicial Code, 28 U.S. C.A. § 1333], said, 282 U.S. at 541, 51 S.Ct. at page 247, 75 L.Ed. 520: "To retain the cause would be to preserve the right of the ship owner, but to destroy the right of the suitor in the state court

to a common-law remedy; to remit the cause to the state court would be to preserve the rights of both parties. The mere statement of these diverse results is sufficient to demonstrate the justice of the latter course * * *."

3. Patently, because of appellee's priority consent, Todd has no interest in, and will not be permitted to litigate, the limitation issue.

value of the investment in the vessel and freight.[4] Where that value is obviously greater than all claims, no matter how many, the statute does not permit limitation. See Curtis Bay Towing Co. v. Tug Kevin Moran, 2 Cir., 159 F.2d 273. This goes to show that the purpose of limitation proceedings is not to prevent a multiplicity of suits but, in an equitable fashion, to provide a marshalling of assets—the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full. See The Aquitania, D.C., 14 F.2d 456, 458, affirmed, 2 Cir., 20 F.2d 457; Curtis Bay Towing Co. v. Tug Kevin Moran, 2 Cir., 159 F.2d 273, 276. Indeed, the very language of the statute bears this out: 46 U.S.C.A. § 184 says that, when loss is suffered by several persons, "and the whole value of the vessel, and her freight for the voyage, *is not sufficient to make compensation to each of them,* they shall receive compensation * * * *in proportion to their respective losses*", and that the limitation proceedings are "for the *purpose of apportioning the sum* * * * among the parties entitled thereto."[5]

 But here, since Todd's claim is bound to be paid in full, the fund is inadequate solely with respect to the single claim of appellee. Practically, then, the situation is the equivalent of that in Red Star Barge Line. In the circumstances, it would be inequitable,[6] and an abuse of discretion, to invoke the statute to deprive appellee of trial by jury or to compel her to liquidate the face amount of her claim in a forum she did not choose.[7] It is suggested that

the federal court should have exclusive jurisdiction because a limitation proceeding resembles a creditor's bill proceeding. But nothing in the nature of an equity suit to marshal assets requires that the amounts of the claims (as distinguished from the distribution of the assets among the claimants) be adjudicated in that suit; see Richle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669.

Affirmed.

---

4. It is an oddity of the statute that it protects the investment of the United States in ships. See Robinson, Admiralty (1939) 878 n. 13.

5. Italics added.

6. That the federal court sitting in admiralty exercises some equitable powers, see W. E. Hedger Company Transportation Corp. v. Galotta, 2 Cir., 145 F.2d 870; Morrison, The Remedial Powers of The Admiralty, 43 Yale L.J. 1 (1933); Cf. Hume v. Moore-McCormack Lines, 2 Cir., 121 F.2d 336, 344.

7. "The privilege of limiting liability is not part of any doctrine of *forum non con-*

*veniens;* a shipowner, sued in several places by several persons, has no advantage over other persons in the same position." Curtis Bay Towing Co. v. Tug Kevin Moran, 2 Cir., 159 F.2d 273, 276.

There were perhaps contrary intimations in Hartford Accident Co. v. Southern Pacific, 273 U.S. 207, 216, 47 S.Ct. 357, 71 L.Ed. 612. But there the claimant had begun its suit in the admiralty court and thus was not deprived of a right to go to the state court. In the subsequent Green cases, the claimant had sued in the state court.