678 F.2d 636
 In the Matter of S & E SHIPPING CORP., as owner of the
Steamer Henry Steinbrenner, for exoneration from
or limitation of liability, Plaintiff-Appellant,
v.
CHESAPEAKE & OHIO RAILWAY CO., Toledo-Lucas County Port
Authority, Lawrence Myhre, Claimants, Defendants-Appellees.
 No. 80-3426.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 10, 1981.
Decided May 12, 1982.
 
 Gene B. George, Cleveland, Ohio, for plaintiff-appellant.
 Robert M. Anspach, Shumaker, Loop & Kendrick, Toledo, Ohio, for Chesapeake & O. Ry. Co. and Lucas County.
 Merritt W. Green, II, Green, Ashley, Skow, MacHarg & Weglian, Toledo, Ohio, for Myhre.
 Before ENGEL and KENNEDY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 CELEBREZZE, Senior Circuit Judge.
 
 
 1
 Plaintiff-appellant, S & E Shipping Corp., owner and operator of the Steamer Henry Steinbrenner, appeals pursuant to 28 U.S.C. Sec. 1292(a)(1). S & E brought an admiralty action in the District Court for the Northern District of Ohio for exoneration from or limitation of liability arising out of an accident. 46 U.S.C. Secs. 181 et seq. S & E seeks review of the district court's decision modifying its injunction to permit defendants-appellees Lawrence Myhre and Karoline Myhre to proceed with a state court negligence action pending in the Court of Common Pleas for Lucas County, Ohio. We reverse the district court's order and remand the case for trial.
 
 I.
 
 2
 The Steamer Henry Steinbrenner was moored outboard of the Steamer Charles C. West, the Steinbrenner's port side to the West's starboard side. The West was moored in a slip adjacent to a dock owned by the Toledo-Lucas Port Authority and leased to the Chesapeake & Ohio Railway System ("Chessie System"). The Chessie System operates a docking facility with which it unloads ore from vessels onto railroad cars and unloads coal from cars into vessels.
 
 
 3
 Since April 18, 1978, the Steinbrenner had been fitting out in preparation for her first voyage of the season on April 29, 1978. During this time, the Steinbrenner was fully manned by a crew of officers and seamen, all of whom were under the Shipping Articles. Among the vessel's crew was third assistant engineer Lawrence Myhre. Mr. Myhre began sailing in 1963, obtained his license in 1974, and had worked for S & E aboard various vessels in previous years. On April 27, 1978, watches had not yet been set, and the crew performed fit-out work during the day and was off-duty during the evening.
 
 
 4
 On the evening of April 27, 1978, Mr. Myhre went ashore to make a telephone call to his wife. In order to reach the telephone booth, Mr. Myhre crossed the Steamer West and some railroad tracks on the Chessie System's dock property. While crossing the track, he heard an oncoming railroad car and unsuccessfully attempted to get off of the track. His foot caught and the car severed his legs at the knees.
 
 
 5
 Mr. Myhre and his wife, Karoline, filed a civil action on February 9, 1979 in the Court of Common Pleas for Lucas County, Ohio against the Port Authority, the Chessie System, and S & E. The claims against the Port Authority and Chessie are based upon state law; the claims against S & E are maritime. Mr. Myhre alleges that S & E breached its duty to provide a safe work place required under the Jones Act, 46 U.S.C. Sec. 688, that it breached its duty to maintain a seaworthy vessel, and that it breached its duty to provide maintenance and cure to an injured seaman. Karoline Myhre seeks to recover for the loss of her husband's society, comfort, and consortium under state common law and general maritime law.
 
 
 6
 On March 14, 1979, S & E filed an admiralty action in the district court for exoneration from or limitation of liability. 46 U.S.C. Secs. 181 et seq. The district court entered an order enjoining further prosecution of any action against the shipowner in state court and admonished all claimants to present their claims against S & E in the district court. Fed.R.Civ.P., Supplemental Rules for Certain Admiralty and Maritime Claims F(3) & (4).
 
 
 7
 In response to the district court's order, the Chessie System, the Port Authority, and the Myhres filed their claims in the district court. The Chessie System and the Port Authority jointly asserted four claims against S & E.[1] First, Chessie seeks indemnification for any amount it becomes obligated to pay Mr. Myhre, including attorneys' fees and costs of litigation. This claim is based on the indemnity clause in the license agreement between Chessie and S & E.[2] Second, Chessie seeks indemnification pursuant to the license agreement for all costs and expenses incurred in its defense of the Port Authority.[3] Third, Chessie seeks indemnification for all claims, costs, and attorneys' fees incurred as a result of the accident. Chessie argues that if it or the Port Authority were negligent, their negligence was passive and secondary and S & E's negligence was active and primary; therefore, S & E should be required to indemnify them. Fourth, the Chessie System and Port Authority seek from S & E, a joint tortfeasor, contribution under Ohio statutory law. Ohio Rev.Code Ann. (Page) Sec. 2307.31. Mr. and Mrs. Myhre filed a joint claim and answer with the district court, setting forth essentially the same maritime claims alleged in their state court action and denying S & E's right to limit liability.[4]
 
 
 8
 After all claims had been filed, the Myhres moved to modify the district court's injunction staying proceedings in the state court action. The Myhres asserted that because there is only a single claim against S & E, the district court may modify its injunction. Along with the motion, the Myhres filed the usual stipulations relating to the priority of claims and S & E's right to limit its liability.[5] On May 23, 1980, the district court entered an order granting the motion and allowing the Myhres to proceed with their state court action.
 
 
 9
 On June 20, 1980, S & E filed a notice of appeal. After the notice of appeal had been filed, the Port Authority dismissed with prejudice its claims against S & E. In addition, the Myhres and the Chessie System filed certain stipulations with the district court which they believe settle the priority of the Myhres' and the Chessie System's claims to the extent that they are not identical.[6]
 
 II.
 
 10
 The claimants initially contend that the issue of whether multiple claims exist need not be reached because the stipulations filed with the district court eliminate the possibility of multiple claims and provide an independent ground supporting the district court's decision to modify the injunction.[7] They assert that the Port Authority's claims for indemnity or contribution cannot create multiple claims because it has dismissed its claims against S & E with prejudice. Moreover, the Myhres have stipulated that the Chessie System's claim for attorneys' fees, expenses, and costs, if such a claim is subject to limitation, should be satisfied before any judgment is paid to them. The Chessie System has stipulated that the district court has exclusive jurisdiction to determine the value of the Steinbrenner, the value of any limitation fund, and whether the Chessie System's claims are subject to limitation. In addition, the Chessie System has agreed not to raise the valuation and limitation issues in state court and to waive any res judicata claims relevant to these issues. The district court entered an order modifying the record to include these stipulations and the dismissal pursuant to Fed.R.App.P. 10(e).
 
 
 11
 The claimants argue that these stipulations, if properly presented before the district court, would, in effect, create a single claim situation. The district court would, therefore, have no need to exercise its exclusive admiralty jurisdiction to allocate an inadequate limitation fund among competing claimants. In Universal Towing Co. v. Barrale, 595 F.2d 414 (8th Cir. 1979), the Eighth Circuit, considering a series of stipulations similar to those made in this case, ruled that a district court should permit the state court action to proceed. The claimant's "consent has, in effect, eliminated the need for a concourse since it is unnecessary to apportion an inadequate limitation fund between two claimants. Any award of attorney's fees and costs ... will be paid in full from the limitation fund." Id. at 420 (footnote omitted). See also Helena Marine Service, Inc. v. Sioux City, 564 F.2d 15 (8th Cir. 1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978); In re Moran Transp. Corp., 185 F.2d 386 (2d Cir. 1950), cert. denied, 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951). The Eighth Circuit concluded that the stipulations essentially created a single claim situation.
 
 
 12
 We need not reach the issue of the effect of the stipulations filed in this litigation. The stipulations were not properly brought before this court and, therefore, cannot be considered in our evaluation of the procedural issues. The district court accepted the stipulations pursuant to Fed.R.App.P. 10(e)[8] after S & E filed its notice of appeal. The district court, however, interpreted Appellate Rule 10(e) too broadly. The purpose of the rule is to allow the district court to correct omissions from or misstatements in the record for appeal, not to introduce new evidence in the court of appeals.[9] See United States v. Walker, 601 F.2d 1051, 1054-55 (9th Cir. 1979); Walker v. Felmont Oil Corp., 262 F.2d 163, 165 (6th Cir. 1958); Notes of the Advisory Comm. on Civil Rule 75(h) (1946) (predecessor to current Rule 10(e)). Appellate Rule 10(e) does not empower a district court to accept stipulations which significantly alter the record after a notice of appeal has been filed.[10]
 
 
 13
 Prohibiting parties from substantially altering the record by submitting stipulations in the district court after a notice of appeal has been filed comports with the policy of fostering judicial efficiency. If parties were permitted to make significant changes in the record in this manner, we would risk expending limited judicial resources on issues which the parties would ultimately determine with stipulations subsequently made in the district court. Moreover, such changes in the record can be unfair to litigants who prepare for an issue which other parties substantially change or eliminate by stipulation after a notice of appeal is filed. Fair and effective appellate review requires that we have a stable record before us.
 
 
 14
 We hold, therefore, that the stipulations filed in the district court in this case are not properly before this court. Thus, we must proceed to the issue of whether the various claims asserted by the parties actually create a multiple claims situation.
 
 III.
 
 15
 S & E seeks to limit its liability for the accident on the basis of the Limitation of Shipowners' Liability Act, 46 U.S.C. Secs. 181 et seq. The Act limits the liability of a shipowner, for any loss incurred without the knowledge or privity of the owner, to the value of the vessel and its freight.[11] 46 U.S.C. Sec. 183(a). A shipowner may petition a district court of proper jurisdiction for exoneration from or limitation of liability. 46 U.S.C. Sec. 185. Upon the shipowner's filing of the petition and his tender of an adequate bond, the district court must enjoin all other proceedings against the shipowner involving issues arising out of the subject matter of the limitation action. Id. See, e.g., Helena Marine Service, Inc. v. Souix City, 564 F.2d 15, 17 (8th Cir. 1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978); In re Red Star Barge Line, Inc., 160 F.2d 436, 436-37 (2d Cir. 1947).
 
 
 16
 The purpose of the concursus, the proceeding before the admiralty court in which all competing claims must be litigated, is to provide for a marshalling of assets and for a setting of priorities among claims where the asserted claims exceed the value of the vessel and its freight. "(T)he purpose of the limitation proceedings is not to prevent a multiplicity of suits but ... to provide a marshalling of assets-the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." In re Moran Transp. Corp., 185 F.2d 386, 389 (2d Cir. 1950), cert. denied, 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951). See Lake Tankers Corp. v. Henn, 354 U.S. 147, 151-53, 77 S.Ct. 1269, 1271-72, 1 L.Ed.2d 1246 (1957).
 
 
 17
 The courts have had to reconcile the purposes of the admiralty court's concursus under the Limitation Act, which proceeds in equity without a jury, with the claimant's right to a trial by jury for common law claims. The United States district courts have exclusive original jurisdiction over "(a)ny case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. Sec. 1333. The policies of the Limitation Act can conflict with the saving to suitors clause.
 
 
 18
 Where multiple claims are asserted in the district court and are, in the aggregate, in excess of the limitation fund, a multiple claims-inadequate fund circumstance arises and the district court properly conducts a concursus. See Ex Parte Green, 286 U.S. 437, 438-40, 52 S.Ct. 602, 603, 76 L.Ed. 1212 (1932); Langnes v. Green, 282 U.S. 531, 541-44, 51 S.Ct. 243, 247-48, 75 L.Ed. 520 (1931); Universal Towing Co. v. Barrale, 595 F.2d 414, 418-19 (8th Cir. 1979).
 
 
 19
 The district court, however, must dissolve a stay of proceedings and permit claimants to litigate their claims in alternative forums in two circumstances. First, if the limitation fund exceeds the aggregate of all claims, claimants must be permitted to proceed in other forums. E.g., Lake Tankers Corp. v. Henn, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957); In re Trinidad Corp., 229 F.2d 423, 428 (2d Cir. 1955); In re Moran Transp. Corp., 185 F.2d 386 (2d Cir. 1950), cert. denied, 340 U.S. 953, 71 S.Ct. 573, 93 L.Ed. 687 (1951). If a limitation fund is inadequate to pay all potential claims, a concursus is necessary to avoid competition among claimants for a greater share of a fixed limitation fund and to provide for a marshalling of assets and a setting of priorities. If other proceedings were not stayed in such circumstances, claimants might obtain judgments which would, in the aggregate, exceed the fund and thus subject the shipowner to liability in excess of the statutory limit. See In re Trinidad Corp., 229 F.2d at 428.
 
 
 20
 Where the limitation fund is sufficient to pay all potential claims, however, a concursus is unnecessary because the claimants need not compete among themselves for larger portions of a limited fund. This exception to the concursus procedure protects the claimant's right to a jury trial in the forum of his choice without undermining the Limitation Act's policy of limiting the shipowner's liability to the value of the vessel and its freight.[12]
 
 
 21
 Second, if only one claim is made, regardless of its size in relation to the value of the limitation fund, the district court must dissolve its stay of other proceedings. E.g., Ex Parte Green, 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212 (1932); Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931); Great Lakes Dredge & Dock Co. v. Lynch, 173 F.2d 281 (6th Cir. 1949). In this situation, a concursus is unnecessary because there are no additional claimants competing for portions of the limitation fund. The district court, however, must ultimately decide whether the shipowner has a right to limitation of liability; the claimant may pursue his common law remedies in another forum only if he concedes that the district court has exclusive jurisdiction over the question of whether liability is limited.[13] See Helena Marine Service, Inc. v. Souix City, 564 F.2d 15, 18 (8th Cir. 1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978); In re Red Star Barge Line Inc., 160 F.2d 436 (2d Cir.), cert. denied, 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859 (1947). This procedure furthers the Limitation Act's purpose of limiting the shipowner's liability and the saving to suitors clause's purpose of preserving the claimant's right to a jury trial in alternative forums.
 
 
 22
 S & E contends that this case presents a multiple claims-inadequate fund situation. It posits that several claims are separate from Mr. Myhre's basic negligence claim: Mrs. Myhre's claim for loss of consortium, the Chessie System's claims for indemnity based on the license agreement and the parties' relative degrees of negligence, the Chessie System's and Port Authority's claims for contribution, and the various claims for costs and attorneys' fees.
 
 
 23
 The district court held that this case presents a single claim situation. It reasoned that the indemnity and contribution claims are derivative of Mr. Myhre's claim and, thus, present but another aspect of a single claim. Moreover, the district court concluded that Chessie's claims for legal expenses and costs were merely "incidental" to the indemnification claims and noted that attorneys' fees claims may not be subject to limitation in any event. We disagree with the reasoning and conclusions of the district court.
 
 
 24
 We now consider each claim to determine whether this is a multiple claims-inadequate fund situation. Mrs. Myhre's claim for loss of consortium does not present a separate claim requiring a concursus because she has stipulated that her husband's claims take priority over hers. Claimants may make such stipulations, reducing their claims and establishing priorities, in order to eliminate the need for a limitations proceeding. See Lake Tankers Corp. v. Henn, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957); Universal Towing Co. v. Barrale, 595 F.2d 414 (8th Cir. 1979); In re Moran Transp. Corp., 185 F.2d 386 (2d Cir. 1950), cert. denied, 340 U.S. 953, 71 S.Ct. 573, 93 L.Ed. 687 (1951).
 
 
 25
 We need not decide whether the indemnity claims based on the license agreement between S & E and the Chessie System create separate claims rendering this a multiple claims-inadequate fund case. These indemnity claims are based on a personal contract between S & E and Chessie. Liability stemming from a personal contract is not subject to limitation under the Act. See American Car & Foundry Co. v. Brassert, 289 U.S. 261, 264, 53 S.Ct. 618, 619, 77 L.Ed. 1162 (1933); Pendleton v. Benner Line, 246 U.S. 353, 356, 38 S.Ct. 330, 331, 62 L.Ed. 770 (1917); Richardson v. Harmon, 222 U.S. 96, 106, 32 S.Ct. 27, 30, 56 L.Ed. 110 (1911) (the Limitation Act "limit(s) the owner's risk to his interest in the ship in respect of all claims arising out of the conduct of the master and crew, whether the liability be strictly maritime or from a tort non-maritime, but leaves him liable for his own fault, neglect and contracts").[14] Because only claims subject to limitation should be considered in determining whether multiple claims exist, see In re Trinidad Corp., 229 F.2d 423 (2d Cir. 1955); W. E. Hedger Transp. Corp. v. Gallotta, 145 F.2d 870 (2d Cir. 1944), the indemnity claims based on S & E's personal indemnity contract with the Chessie System do not result in separate claims.
 
 
 26
 Chessie's independent claim of indemnity based on the parties' relative degrees of negligence and claim of contribution among joint tortfeasors do not create a multiple claims-inadequate fund situation.[15] The injured party's claim and the third party's indemnity claim should be treated as a single claim for purposes of a limitation action. Universal Towing Co. v. Barrale, 595 F.2d 414, 419 (8th Cir. 1979); Helena Marine Service, Inc. v. Souix City, 464 F.2d 15, 19 (8th Cir. 1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978); In re Humble Oil & Ref. Co., 210 F.Supp. 638, 639-40 (S.D.Tex.1961), aff'd sub nom., Humble Oil & Ref. Co. v. Reagan, 311 F.2d 576 (5th Cir. 1962); In re Republic of (South) Korea, 175 F.Supp. 732, 735 (D.Ore.1959). The reason is that the indemnity claim is derived from and is dependent upon the primary claim against the shipowner. If the primary claimant proceeds against the shipowner, his recovery would be limited to the fund if the Act applies; if he proceeds against the third party, the latter can seek indemnity for the amount paid in satisfaction of the judgment to the extent of the limitation fund. In any event, the claimants, in effect, may enforce only one damages award against the shipowner. The result is that the indemnity and contribution claims based on negligence theories do not create a multiple claims-inadequate fund situation and do not require a concursus in the district court.[16]
 
 
 27
 The Chessie System's claims for attorneys' fees and costs, however, present multiple claims-inadequate fund situation. Helena Marine Service, Inc. v. Souix City, 564 F.2d 15, 19 (8th Cir. 1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978). See Universal Towing Co. v. Barrale, 595 F.2d 414, 419 (8th Cir. 1979). The attorneys' fees claim is separate from any claims for liability[17] and presents the possibility of different[18] and inconsistent judgments against S & E in excess of the limitation fund: the Myhres would have a claim for negligence and the Chessie System would have a claim for indemnity, attorneys' fees, and costs. This result could produce two competing claims greater than the limitation amount and thus require a concursus to marshall assets and set priorities.[19] Allowing the Myhres to proceed with their separate state court action, therefore, would be inconsistent with the purposes of the Limitation Act.
 
 
 28
 Because the Chessie System has made a claim for attorneys' fees and costs that are subject to limitation, this case presents a multiple claims-inadequate fund situation. We hold that where claims are made both for negligence and for attorneys' fees and costs, the Limitation Act requires a concursus and the district court erred in modifying its injunction to permit the claimants to prosecute their claims in other forums. We reverse the district court's order and remand this case for further proceedings not inconsistent with this opinion.
 
 
 29
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 30
 I concur in the result reached by the majority and in the opinion except that portion which holds that Chessie's independent claim of indemnity based on the parties' relative degrees of negligence and its claim of contribution among joint tortfeasors are derivative of the Myhres' claim against S & E. At 645.
 
 
 31
 The majority holds that Chessie's claims for indemnity and contribution are merely derivative of the Myhres' claims against S & E. The majority's analysis would permit Chessie to raise its claims in state court against S & E without a stipulation from Chessie that any state court judgment for contribution or indemnity in its favor and against S & E will be res judicata, or a stipulation that the District Court retains exclusive jurisdiction to decide all questions relating to limitation of liability.
 
 
 32
 As the majority recognizes, once a shipowner has filed for protection under the Limited Liability Act even a single claimant may not proceed with a state court action against a shipowner unless the claimant first stipulates that any state court judgment will not be res judicata on the extent of the shipowner's liability, and that only the District Court will determine the value of the fund from which judgments will be paid and decide whether a given claim is subject to the limitation provisions. Langnes v. Green, 282 U.S. 531, 541-542, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931); Universal Towing Co. v. Barrale, 595 F.2d 414, 418 (8th Cir. 1979). If there remains a risk that continuation of the state court proceedings will deny a shipowner the protection afforded by the Limited Liability Act it is an abuse of discretion for the District Court to permit the state court proceedings to continue.
 
 
 33
 That risk could exist here on remand. Chessie asserts that it is entitled to either contribution or indemnity from S & E under Ohio law in the event the Myhres obtain a favorable judgment against Chessie in state court. A court assuming as the majority does that Chessie can recover no more from S & E than the Myhres can, because its claims derive from the Myhres', would not require Chessie to stipulate that the admirality court may decide all limitations questions before letting Chessie proceed in state court. The following would then be possible. The Myhres could win a large judgment against Chessie and S & E jointly in the state court, say $1,000,000. Chessie could also win a judgment in state court entitling it to contribution from S & E for anything it pays the Myhres in excess of one-half the judgment, or $500,000. Because of the stipulation they have filed with the District Court the Myhres could collect no more from S & E than the value of the limitation fund as determined by the District Court. If the fund contains only $250,000 as S & E alleges, then Chessie, jointly and severally liable, would be obligated to pay the Myres the unpaid balance of the judgment, or $750,000. Under its right to contribution Chessie would be entitled to recover from S & E any excess over $500,000 that it paid the Myhres, or $250,000. Since Chessie did not stipulate that any state court judgment in its favor would not be res judicata on the limitation question it would then have a $250,000 claim against S & E that was not subject to limitation. The result would be that S & E would have to pay a total of $500,000 on account of the injury to Mr. Myhre when under the Limited Liability Act it should only have been liable for the value of the vessel, or $250,000. This is a clear violation of the Limited Liability Act.*
 
 
 34
 There is caselaw to support the majority's position but it is not persuasive. See Universal Towing Co. v. Barrale, supra, 595 F.2d at 419; Helena Marine Service, Inc. v. Sioux City, 564 F.2d 15, 19 (8th Cir. 1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978); In re Republic of (South) Korea, 175 F.Supp. 732, 735 (D.Or.1959). Each of these courts states that a third party's claim for indemnity from the shipowner is merely derivative of the plaintiff's claim against the shipowner, so does not create a risk of unlimited liability that prevents the state court proceeding from continuing. In fact, if the third party claim is derivative of anything it is derivative of the plaintiff's claim against the third party, not plaintiff's claim against the shipowner. The third party's claim against the shipowner arises because the plaintiff has succeeded against the third party, not because the plaintiff may have succeeded against the shipowner.
 
 
 35
 Universal Towing and the majority both assume that a third party's indemnification or contribution from a shipowner cannot increase the shipowner's liability beyond the plaintiff's limited recovery from the shipowner. See 595 F.2d at 419; At 645. The assumption is unwarranted. A plaintiff's state court judgment against the shipowner is subject to limitation only because the plaintiff was required to file a stipulation to that effect before his state court lawsuit could proceed. The plaintiff's stipulation had no effect on his potential recovery from the third party or that third party's claim for contribution or indemnity. Absent a stipulation from the third party there is no assurance that the shipowner's liability to the third party will be limited.
 
 
 36
 The majority also contends that only one damages award may, in effect, be enforced against the shipowner. This is true in the sense that there is only one total damage award to the plaintiff and the third party may recover from the shipowner no more than it was required to pay the plaintiff. However, although a judgment in favor of a third party for indemnity or contribution will not increase the total award the plaintiff receives, it may alter the proportion paid by the shipowner and third party. If the majority's position prevails the award will be subject to limitation to the extent it is asserted by the plaintiff but not to the extent it is asserted by the third party. This happens because a party claiming indemnity or contribution is not limited to the rights of the plaintiff against the co-defendant or bound by plaintiff's partial waiver of his rights. It asserts its own rights which arise by statute or at common law.
 
 
 37
 The fact that a third party's claim against a shipowner is derivative of the plaintiff's claim against the third party rather than the plaintiff's claim against the shipowner distinguishes this case from Petition of Humble Oil & Refining Co., 210 F.Supp. 639 (S.D.Tex.1961), aff'd sub nom., Humble Oil & Refining Co. v. Reagan, 311 F.2d 576 (5th Cir. 1962). In Petition of Humble Oil a workmen's compensation insurance company paid a claim to the estate of a deceased seaman. The seaman's estate then sued the shipowner and the insurance company claimed a right to be subrogated to any recovery the estate won from the shipowner to the extent of the payment it had already made. The court properly held that this claim of subrogation, which would arise only if the estate recovered against the shipowner and could come from no source other than plaintiff's recovery against the shipowner, was derivative of the estate's claim and did not create a risk of unlimited liability. In Petition of Humble Oil, there was no third party claim against the ship. The insurance company's claim was against any award the estate received. By contrast, in the instant case Chessie's potential claim against S & E would not be satisfied out of any award S & E must pay the Myhres. It arises independently and would arise, if at all, because the Myhres did not receive sufficient money from S & E.
 
 
 38
 For these reasons I think Universal Towing, Helena Marine, and Republic of (South) Korea are in error. I would instead follow the dictum of Judge Learned Hand in W. E. Hedger Transportation Corp. v. Gallotta, 145 F.2d 870, 872 (2d Cir. 1944), quoted in the majority's footnote 16. It is a mistake to say that Chessie's indemnity and contribution claims are merely derivative of the Myhres' claim against S & E. They are separate claims based on what Chessie must pay to the Myhres, not limited by what S & E must pay the Myhres, and must be separately dealt with before the state court action can properly proceed.
 
 
 39
 As stated previously, I concur in the remainder of the majority's opinion.
 
 
 
 [1]
 The claims of the Chessie System and the Port Authority were filed jointly because the lease agreement between the two parties required Chessie to indemnify and defend the Port Authority
 
 
 [2]
 The license agreement between S & E and the Chessie System provides:
 Licensee (S & E) hereby covenants and agrees to assume and bear all loss of or damage to any property of the Licensor, (Chessie System), and further covenants and agrees to indemnify, defend, and protect the Licensor against all liability, loss, cost, damage and expense which the Licensor may incur or suffer on account of the damage to or loss or destruction of any other property, and the death of or injury to any person or persons, including employees, patrons, licensees and guests of the Licensor, caused by, arising out of, or in any way connected with the exercise, use and enjoyment of the license, rights and privileges herein granted, including those caused in whole or in part by the negligence of the Licensor, its agents and employees.
 
 
 [3]
 See note 1, supra
 
 
 [4]
 The aggregate value of claims exceeds the alleged $250,000 value of the Steinbrenner and its freight. Mr. Myhre's claims total $6.15 million; Mrs. Myhre's claims are for $1.5 million; the Chessie System and the Port Authority seek indemnity, contribution, costs, and attorneys' fees
 
 
 [5]
 Mr. and Mrs. Myhre submitted the following stipulations to the district court:
 
 
 [1]
 Mr. and Mrs. Myhre concede and agree that the United States District Court for the Northern District of Ohio, Western Division, has the exclusive authority to determine the value of the vessel sought to be limited in these proceedings, or the value of any limitation fund which may be necessary for the satisfaction of claims against the vessel owner and, in addition, has the exclusive authority to determine whether or not the vessel owner has the right to limit its liability to these claimants
 
 
 [2]
 Mr. and Mrs. Myhre, and their counsel agree not to raise as issues in the state court the right of the vessel owner to limit its liability or the value of the vessel
 
 
 [3]
 Mr. and Mrs. Myhre waive any claim of res judicata relevant to the issue of liability in these proceedings and based upon any judgment in the State Court
 
 
 [6]
 On October 7, 1980, after the notice of appeal was filed, Mr. and Mrs. Myhre made the following stipulations in the district court:
 Claimants, Lawrence and Karoline Myhre do hereby stipulate and consent to the allowance of the claim of The Chesapeake and Ohio Railway Company against S & E Shipping Corp. for its attorneys' fees, expenses and costs herein, in such amounts that may be fixed by the Court, and in the event it is ultimately determined that such claim is subject to limitation. And, in such event, Claimants, Lawrence and Karoline Myhre further stipulate and consent that such amount, as it may be fixed by the Court, may be deducted and paid out of the funds available in this proceeding before the payment of any judgment that may be recovered by Claimants, Lawrence and Karoline Myhre.
 At the same time, the Chessie System submitted the following stipulations in the district court:
 
 
 [1]
 It concedes and agrees that the United States District Court for the Northern District of Ohio, Western Division, has the exclusive authority to determine the value of the vessel sought to be limited in these proceedings, or the value of any limitation fund which may be necessary for the satisfaction of claims against the vessel owner, and, in addition, has the exclusive authority to determine whether or not the vessel owner has the right to limit its liability to this Claimant
 
 
 [2]
 It agrees not to raise as issues in the State Court the right of the vessel owner to limit its liability or the value of the vessel
 
 
 [3]
 It agrees to waive any claim of res judicata relevant to the issue of limitation of liability based upon any judgment in the State Court action
 
 
 [7]
 The district court must retain exclusive admiralty jurisdiction for a concursus where multiple claims exist in order to provide for marshalling of assets and for establishing the priority of claims. Where a single claim situation exists, however, the district court may allow claimants to litigate liability and damages issues in other courts. The scope and policies of this rule are discussed in Part III, infra
 
 
 [8]
 Appellate Rule 10(e) provides:
 Correction or Modification of the Record. If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.
 Fed.R.App.P. 10(e).
 
 
 [9]
 Rule 10(e) allows modification of the record transmitted to the court of appeals so that it adequately reflects what happened in the district court. See United States ex rel. Mulvaney v. Rush, 487 F.2d 684, 687 n.5 (3rd Cir. 1973). The rule is properly used to ensure that the record before the court of appeals is accurate. See, e.g., Commonwealth of Massachusetts v. United States Veterans Administration, 541 F.2d 119, 123 n.5 (1st Cir. 1976) (striking papers in the appellate record which were not presented in the district court); Cox v. General Elec. Co., 302 F.2d 389 (6th Cir. 1962) (failure of the trial transcript to disclose what actually happened in the district court); Superior Mfg. Co. v. Hessler Mfg. Co., 267 F.2d 302 (10th Cir.), cert. denied, 361 U.S. 876, 80 S.Ct. 139, 4 L.Ed.2d 115 (1959) (resolving a conflict between a party's recollection of events and the recorder's trial transcript)
 
 
 [10]
 Although the filing of a notice of appeal generally ends the district court's jurisdiction and transfers jurisdiction to the court of appeals, this court has held that the district court retains jurisdiction to proceed with matters in aid of the appeal. See Cochran v. Birkel, 651 F.2d 1219 (6th Cir. 1981). This case does not fall within this category and is distinguishable from cases finding continued jurisdiction in the district court. Jago v. United States District Court, 570 F.2d 618, 619-22 (6th Cir. 1978), which permitted the district court to grant bail to a successful habeas petitioner under Fed.R.App.P. 23 event though an appeal by the state was pending, is predicated upon the unique history and procedure of habeas corpus. First Nat'l Bank of Salem, Ohio v. Hirsch, 535 F.2d 343 (6th Cir. 1976), indicates that, absent a remand by the appellate court, a district court may not decide a Fed.R.Civ.P. 60(b) motion to vacate judgment after notice of appeal has been filed. Implicit in that ruling is the principle that the district court has no jurisdiction to make a Rule 60(b) decision unless this court remands the case. Cochran v. Birkel, supra, holds that a district court has jurisdiction to proceed with a case after the filing of notice of appeal from a "clearly" nonappealable order. The policy for such an exception is to prevent litigants from making such appeals as a dilatory tactic. This action is based upon an appealable order under 28 U.S.C. Sec. 1292(a)(1), see In re Mucho K., Inc., 578 F.2d 1156 (5th Cir. 1978); Pershing Auto Rentals, Inc. v. Gaffney, 279 F.2d 546, 548 n.3 (5th Cir. 1960); Great Lakes Dredge & Dock Co. v. Lynch, 173 F.2d 281 (6th Cir. 1949), and reflects no intention to disrupt or delay the judicial process
 
 
 [11]
 The purpose of the Limitation of Shipowners' Liability Act, 46 U.S.C. Secs. 181 et seq., is to protect maritime commerce and encourage the development of an American merchant fleet. See, e.g., Maryland Cas. Co. v. Cushing, 347 U.S. 409, 414, 74 S.Ct. 608, 610, 98 L.Ed. 806 (1954); American Car & Foundry Co. v. Brassert, 289 U.S. 261, 263, 53 S.Ct. 618, 77 L.Ed. 1162 (1933); Great Lakes Dredge & Dock Co. v. Lynch, 173 F.2d 281 (6th Cir. 1949)
 
 
 [12]
 The Supreme Court reasons that to require claimants to proceed in admiralty where the limitation fund is adequate to pay all potential claims
 would transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights, even where the limitation fund is known to be more than adequate to satisfy all demands upon it. The shipowner's right to limit is not so boundless. The Act is not one of immunity from liability but of limitation of it and we read no other privilege for the shipowner into its language over and above that granting him limited liability.
 Lake Tankers Corp. v. Henn, 354 U.S. 147, 152-53, 77 S.Ct. 1269, 1272, 1 L.Ed.2d 1246 (1957).
 
 
 [13]
 The claimant must file his claim in district court, concede that the limitation fund is equal to the value of the vessel and freight, waive any res judicata arguments based on the state court's judgment, and concede that the district court has jurisdiction to decide limitation of liability issues. See, e.g., Universal Towing Co. v. Barrale, 595 F.2d 414 (8th Cir. 1979); Great Lakes Dredge & Dock Co. v. Lynch, 173 F.2d 281 (6th Cir. 1949); In re Red Star Barge Line, Inc., 160 F.2d 436 (2nd Cir.), cert. denied, 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859 (1947)
 The hypothetical risk that the district court may be deprived of power to decide limitation issues, discussed in the concurring opinion, cannot occur. The Myhres in this case have made the necessary stipulations. See note 5 and accompanying text, supra. Chessie, however, has not filed these stipulations; thus, the district court properly modified its injunction to allow only the Myhres to pursue their claims in state court. The purpose of these stipulations is to preserve the district court's jurisdiction regarding S & E's right to limited liability; this issue is independent of the question of whether multiple claims exist. These stipulations must be filed even where only a single claimant is before the district court. Great Lakes Dredge & Dock Co. v. Lynch, supra. The concurring opinion assumes that Chessie may proceed with its claims in state court without making the necessary stipulations; this assumption fails to recognize, however, that the injunction against Chessie was not modified because it had not filed the stipulations.
 
 
 [14]
 The Act limits the liability for losses caused "without the privity or knowledge of such owner." 46 U.S.C. Sec. 183(a). The Court established the personal contract exception because the Act is only intended to limit the shipowner's liability for matters beyond his control. A personal contract is obviously within the control of the shipowner. See Pendleton v. Benner Line, 246 U.S. 353, 356-57, 38 S.Ct. 330, 331, 62 L.Ed. 770 (1917)
 
 
 [15]
 Claims for indemnity and contribution based on the tortious conduct of the master, officers, or seamen are not personal to the shipowner and thus are subject to limitation. 46 U.S.C. Sec. 183(a). See Signal Oil & Gas Co. v. Barge W. 701, 468 F.Supp. 802, 814 (E.D.La.1979), modified, 654 F.2d 1164 (5th Cir. 1981). Such claims may not, therefore, be excluded from the determination of whether multiple claims exist
 
 
 [16]
 In dicta, relied on by the concurring opinion but not addressed by other courts which have considered the indemnification issue under the Limitations Act, the Second Circuit reasoned that a claim for indemnification creates a multiple claims situation:
 Did Gallotta (the primary claimant), by joining the Manhattan Company (a third party) in his action-we may ignore the Commodity Credit Company-forfeit that privilege? His position is that the cross-claim (for indemnity) of the Manhattan Company is the same as his claim against that company, and that therefore there was only one claim as before. As to that we cannot agree. It is true that if Gallotta recovered against both companies but collected from the Manhattan Company, any recovery by that company against the Hedger Company upon its cross-claim up to the value of the barge, might be regarded as a recovery by a subrogatee, substituted for the creditor. But, if Gallotta recovered from the Manhattan Company more than the value of the barge, the excess could obviously not be so regarded; nor could the Manhattan Company's recovery of the expenses involved in defending the action. We cannot therefore dispose of the case upon the assumption that only one claim is involved and that the controversy in the state court can be resolved into no more than whether the Hedger Company or the Manhattan Company shall pay Gallotta the value of the barge. Notwithstanding this, we think that, though the Manhattan Company's claim is a second and independent one, and will, or may, require some added determination, it is not of a kind to be brought into a concourse with Gallotta's claim, and to be tried in the limitation proceeding.
 W. E. Hedger Transp. Corp. v. Gallotta, 145 F.2d 870, 872 (2nd Cir. 1944) (L. Hand, J.). The Second Circuit held that the indemnity claim was predicated on an implied warranty of seaworthiness and the shipowner's liability for such a claim could not be limited; therefore, only one claim subject to limitation was before the district court and a concursus was unnecessary. Id. We find the language in Hedger to be unpersuasive and decline to follow its reasoning. A third party claiming indemnity can only recover what the primary claimant is entitled to recover; in effect, there is only one enforceable damages award against the shipowner. See Universal Towing Co. v. Barrale, 595 F.2d 414, 419 (8th Cir. 1979).
 The concurring opinion defines the concept of a derivative claim too narrowly. See pp. 647-648, infra. Under its analysis, derivative claims are only those stemming from a subrogation theory or a consensual relationship such as the licensing agreement between S & E and Chessie. We are convinced, however, that derivative claims include those based on tort principles of indemnity and contribution, as well as those based on consensual relationships. See Universal Towing Co. v. Barrale, supra, at 419.
 
 
 [17]
 In re Republic of (South) Korea, 175 F.Supp. 732 (D.Ore.1959), indicates that attorneys' fees and costs do not present separate claims. The court reasoned that "these 'costs and expenses' are not independent claims, but are merely incidental to the (primary plaintiff's) claim made enforceable through an indemnitee." Id. at 735. Attorneys' fees, however, can be substantial and are not "incidental" in the sense of being dependent upon and determined by the amount of the negligence judgment. Furthermore, the court in that action failed to consider the risk of inconsistent judgments in excess of the limitation fund where parties claim attorneys' fees and costs
 
 
 [18]
 The attorneys' fees and costs claims based on the license agreement between S & E and the Chessie System stem from a personal contract and, therefore, are not subject to limitation. See American Car & Foundry Co. v. Brassert, 289 U.S. 261, 53 S.Ct. 618, 77 L.Ed. 1162 (1933); Richardson v. Harmon, 222 U.S. 96, 32 S.Ct. 27, 56 L.Ed. 110 (1911). The Chessie System, however, makes a claim for attorneys' fees and costs based on the parties' relative degree of negligence; such a claim is not necessarily predicated on the shipowner's personal conduct and thus may form a separate claim. See note 14, supra. The district court reasoned that because a shipowner is liable for court costs, even though such costs create an aggregate liability in excess of the limitation fund, see The Wanata, 95 U.S. 600, 34 L.Ed. 461 (1877); In re Starin, 124 F. 101 (E.D.N.Y.1903), the Chessie System's claims for attorneys' fees and costs are not subject to limitation and should not be considered in determining whether multiple claims exist. Liability for court costs, however, does not imply that a claim for attorneys' fees is not subject to limitation. First, court costs in limitation cases may be awarded because of a party's neglect or contumacy in paying the amount of the stipulation and value. See The Wanata, supra, 95 U.S. at 612-15, 18, 34 L.Ed. 461. The Chessie System's claim of attorneys' fees, however, is based on a tort theory. Second, court costs could not be considered a separate claim, subject to the limitation fund; otherwise, any single negligence claim brought in a limitation action would carry the attendant risk of separate liability for court costs and, thus, eliminate the claimant's right to prosecute a single claim action in state court. Potential liability for attorneys' fees, however, does not have this characteristic
 
 
 [19]
 Of course, we intimate no view on the propriety of awarding attorneys' fees and costs in this litigation
 
 
 *
 Chessie might also assert a claim for common law indemnity on the ground that even if it was negligent its negligence was passive, while S & E was actively negligent and so is primarily responsible for the injury to Mr. Myhre. We need not consider the likelihood that Chessie will actually prevail on this indemnity theory. In another case a third party claiming indemnity from a shipowner will prevail, and the rule laid down by the majority exposes that shipowner to unlimited liability in this Circuit
 Consider the following example for which we have borrowed the names of the parties in this lawsuit. The Myhres obtain a judgment against both Chessie and S & E jointly for $1,000,000. On the theory that it was only passively negligent and S & E was actively negligent Chessie obtains an indemnity judgment against S & E for whatever it must pay to satisfy the Myhres' judgment. On these facts, S & E would pay the Myhres no more than the value of the limitation fund, or $250,000. Thus, Chessie would have to pay the Myhres $750,000 but would be entitled to collect that amount from S & E. Because of our Court's decision in the instant case there would be no bar to Chessie's collecting that money from S & E. This is flatly inconsistent with the protection afforded shipowners by 46 U.S.C. § 185.