F I L E D
United States Court of Appeals
Tenth Circuit

MAR 27 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

NORMAN RICHARD CLEARY,

Petitioner-Appellant,

v.

MIKE MULLIN, * Warden,
Oklahoma State Penitentiary,

Respondent-Appellee.

No. 01-5132
(D.C. No. 98-CV-483-H)
(N.D. Okla.)

**ORDER AND JUDGMENT**\*\*

Before **TACHA**, Chief Judge, **BALDOCK** and **MURPHY**, Circuit Judges.

Petitioner-appellant Norman Richard Cleary appeals the district court's

decision denying him habeas relief, *see* 28 U.S.C. § 2254, from his Oklahoma

death sentence. The evidence at trial established that Cleary and a co-defendant

knocked on the door of the home where Wanda Neafus was working as a

housekeeper. Planning to burglarize the home, Cleary and his accomplice pushed

---

\*       Mike Mullin replaced Gary Gibson as Warden of the Oklahoma State
Penitentiary effective March 25, 2002.

\*\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

their way inside the house when Neafus opened the front door. Cleary then took Neafus to the basement, where he shot her five times, killing her. Cleary and his co-defendant then left, taking Neafus's purse and a walking cane.

The jury convicted Cleary of both first-degree malice murder and first-degree burglary. Here, Cleary challenges only his death sentence, arguing that his trial attorneys' representation at the capital sentencing proceeding was constitutionally deficient because counsel failed to investigate and present expert psychological evidence in mitigation and should have had several additional family members testify on Cleary's behalf. We decline to address Cleary's challenge to the lack of a psychological expert, however, because Cleary has never specifically raised that particular claim until now. *See, e.g., Hooker v. Mullin*, 293 F.3d 1232, 1241 n.7 (10th Cir. 2002), *cert. denied*, 123 S. Ct. 975 (2003).

Cleary did previously raise, in his state post-conviction application, his claim that defense counsel should have had additional family members testify on his behalf. Although the state appellate court deemed Cleary to have procedurally defaulted that claim, the State does not reassert that procedural-default defense here. We will, therefore, consider this claim's merit. *See, e.g., id.* at 1238 n.4, 1244. In doing so, we will review *de novo* the district court's decision denying habeas relief because the state appellate court never addressed this claim's merit.

*See, e.g., Knighton v. Mullin*, 293 F.3d 1165, 1177-78 (10th Cir. 2002), *petition for cert. filed*, (U.S. Nov. 12, 2002) (No. 02-8566).

To prevail on this claim, Cleary must establish both that his attorneys' representation was deficient and that that deficiency prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because we conclude counsel's failure to present this additional mitigating evidence did not prejudice Cleary's defense, however, we need not address whether counsel's performance was deficient. *See id.* at 697.

To establish prejudice at a capital sentencing proceeding, Cleary must show that "there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695. "In making this determination," this court considers "the strength of the State's case and the number of aggravating factors the jury found to exist, as well as the mitigating evidence the defense did offer and any additional mitigating evidence it could have offered." *Knighton*, 293 F.3d at 1178.

At the capital sentencing proceeding, the jury found four aggravating factors: 1) Cleary was a continuing threat to society; 2) he had killed the victim to avoid being arrested and prosecuted for the burglary; 3) he had previously suffered a violent felony conviction; and 4) he committed this murder while he

was serving a prison sentence for a previous felony conviction. The State's evidence strongly supported the jury's findings. At the capital sentencing proceeding, the State incorporated the first-stage evidence and, in addition, established that Cleary had previously been convicted of assault and battery with a dangerous weapon, robbery by fear and first-degree burglary, all stemming from an attack on an eighty-seven year old woman in her home, during which the elderly victim was beaten bloody about her head and face. Cleary had also previously been convicted of several additional first-degree burglaries or attempts to commit first-degree burglary. In fact, Cleary killed Ms. Neafus while he was still on parole for an earlier conviction. And while in prison, he had stabbed another inmate. Cleary's parole officer believes Cleary poses a threat to society, regardless of whether he is in or out of prison.

To counter the State's strong case in aggravation, defense counsel did present two mitigation witnesses, Cleary's younger sister and his Department of Human Services' juvenile case worker. Cleary's sister provided the strongest mitigating evidence, testifying about Cleary's physically and emotionally abusive upbringing; the chaotic home in which he lived as a child; the confusion he felt when, at age sixteen, he discovered his uncle was really his biological father; his anguish resulting from his mother's divorcing his stepfather, at about the same time; and the intense sibling rivalry he endured with his younger stepbrother,

-4-

whom Cleary's mother favored and protected. Cleary's sister further testified that Cleary really was not violent but, instead, was very loving, caring, and gentle towards people and animals. "He has been hurt too badly his whole life. He would not intentionally hurt anyone." Trial tr. vol. V at 702.

Cleary's juvenile case worker, who, at the time of trial, had not seen Cleary for over ten years, also testified that, as a teenager, Cleary's family life had been stressful and chaotic; he often ran away from home; and his mother refused to cooperate consistently with Cleary's treatment and counseling. This case worker further corroborated the fact that Cleary's mother favored his stepbrother, Brian Faihtinger, over Cleary; and that Cleary did not get along well with his mother, who was unnecessarily harsh towards him.

Cleary now asserts that defense counsel should have also had his mother, stepfather, and two stepbrothers testify in mitigation. Most of this additional testimony, however, would have been merely cumulative of the testimony defense counsel did present during the capital sentencing proceeding. *See, e.g., Willingham v. Mullin*, 296 F.3d 917, 934-35 (10th Cir. 2002) (denying habeas relief where additional mitigating witnesses "could have done little to add to the substance of" the testimony defense counsel did present at sentencing).

Furthermore, some of this newly proffered testimony would actually not have been helpful to Cleary's mitigation defense. *See McCracken v. Gibson*,

268 F.3d 970, 980 (10th Cir. 2001) (determining counsel's failing to present additional mitigating evidence did not prejudice defense where, among other reasons, "some of the information . . . could have had a negative effect on the jury"), *cert. denied* , 123 S. Ct. 165 (2002). For example, his mother purportedly would have testified that Cleary is very bright, but, "as a small child[,] he felt the world owed him something." Section 2254 pet., app. B, para. 19 (further quotation omitted). In his mother's opinion, Cleary was "amoral;" that is, "he was so bright that he never recognized when he did something wrong." *Id.* (further quotation omitted). And his stepfather would have testified that Cleary, when he turned thirteen, developed a temper, a "rage [that] was always out of proportion to the event that provoked it." *Id.* at para. 46 (further quotation omitted). Further, another stepbrother, Kenneth Faihtinger, would have testified to Cleary's rage and anger at an even younger age, when he was just a small child.

Moreover, this proffered additional evidence actually contradicts or at least undercuts the mitigation testimony defense counsel did present during the sentencing proceeding. *See Cannon v. Gibson* , 259 F.3d 1253, 1278 (10th Cir. 2001) (determining trial counsel did not prejudice petitioner's capital sentencing defense by not presenting additional mitigating evidence that would have "negated" or "displaced rather than supplemented the mitigation evidence actually

adduced at trial"), *cert. denied*, 122 S. Ct. 1966 (2002). By way of example, Cleary's mother's proffered testimony indicates that both Cleary and his sister had the same biological father. *See* Section 2254 pet., app. B, para. 16. Yet, this contradicts his sister's sentencing testimony about how upset Cleary was to discover that his uncle was, instead, his biological father. And, while Cleary's sister testified at trial that her mother was a "mean, vicious, cruel person that was out for herself," and who was busy "doing her thing," Trial tr. vol. V at 692, his mother now indicates, instead, that she was actually working two jobs, from 7:00 a.m. through 11:00 p.m., to support her family.

Cleary's sister's sentencing testimony also portrayed her mother and stepfather as favoring Cleary's stepbrother Brian over Cleary, and indicated that there had been an intense sibling rivalry between Cleary and Brian. According to Cleary's newly proffered evidence, however, Brian, in fact, credits Cleary with keeping him out of trouble. According to Brian, Cleary "was a true big brother in ever[y] sense" and "a moral guide," teaching Brian to be truthful and helping him curb his behavior. Section 2254 pet., app. B at para. 5 (further quotation omitted). Cleary's mother also "attributes the change in Brian," from petty criminal to one who would never do anything wrong, to Cleary's "brotherly love." *Id.* at para. 25. This particular additional evidence, therefore, undermines the mitigation testimony defense counsel did put on during sentencing.

For these reasons, then, we conclude that, in light of the State's strong case in aggravation, even had defense counsel presented this additional mitigating evidence at the sentencing proceeding, there is no reasonable probability that the jury would have imposed a sentence less than death. *See, e.g., Neill v. Gibson*, 278 F.3d 1044, 1062-63 (10th Cir. 2001), *cert. denied*, 123 S. Ct. 145 (2002).

Cleary further argues, however, that the district court improperly denied habeas relief without first affording him a federal evidentiary hearing. Cleary did unsuccessfully request an evidentiary hearing in his state post-conviction proceedings. In light of that, he would be entitled to a federal evidentiary hearing "if his allegations, if true and not contravened by the record, would entitle him to habeas relief." *Mayes v. Gibson*, 210 F.3d 1284, 1287 & n.2 (10th Cir. 2000). In this case, however, no hearing is warranted because this court is able, instead, to resolve Cleary's habeas claim on the record before us. *See, e.g., Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003).

Lastly, Cleary has attached to his opening brief several documents that he never presented to the district court. The State contends this violates Fed. R. App. P. 10. Rule 10 does define the record on appeal to include, among other things, only documents filed with, or generated in, the district court. *See* Fed. R. App. P. 10(a); *see also, e.g., Manning v. Lockhart*, 623 F.2d 536, 538 (8th Cir. 1980) (holding federal appellate court can only consider "record and

facts considered in the district court"). And, although Rule 10(e)(2) does permit the parties to modify or correct the record on appeal, "[t]he purpose of th[at] rule is to allow the district court to correct omissions from or misstatements in the record for appeal, not to introduce new evidence in the court of appeals." *S & E Shipping Corp. v. Chesapeake & O. Ry.*, 678 F.2d 636, 641 & n.9 (6th Cir. 1982) (citing cases); *see also United States v. Elizalde-Adame*, 262 F.3d 637, 640-41 (7th Cir. 2001). Therefore,

> Rule 10(e) is not designed . . . to add to the record on appeal matters that did not occur there in the course of the proceedings leading to the judgment under review. . . . This is so because the only proper function of the court of appeals is to review the decision below on the basis of the record that was made before the district court.

*Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1474 (10th Cir. 1993) (further quotation omitted); *cf. John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 506 (10th Cir. 1994) (holding appellate court, in reviewing summary judgment decision, cannot consider evidence not before district court). We, therefore, decline to consider this new material. In any event, even Cleary acknowledges that these additional documents are not relevant to the issues now before this court. *See* Appellant's reply br. at 2 (contending Cleary is not asserting this new evidence in support of his habeas claims); *see also* Dist. ct. doc. 17 at 1 (defense attorney stipulating that district court has before it all documents pertinent to its reviewing Cleary's habeas petition).

For these reasons, we AFFIRM the district court's decision denying Cleary habeas relief.

Entered for the Court


Deanell Reece Tacha
Chief Judge
