Curia, per Sutherland, J.
The mere circumstance of the naked legal title to the vessel remaining in Hicks and his associates, to secure the purchase money for which she had been sold, unquestionably would not render them liable as owners, on the contracts of the master, or for the consequences of his negligence and unskilfulness. This precise point was settled in Wendover & Hinton v. Hogeboom and others, (7 John. 308,) and in Leonard & M’Cartee v. Huntington, (15 John. 298.) In the first case, the action was brought against the defendants as owners of a vessel called The Convention, for sails furnished by the plaintiffs, who were sailmakers. The sails were furnished' on the order *698 of A Yosburgh, the master, on the 6th of December, 1806, upon a credit of 9 months. It appeared, from the customhouse books, that the defendants were owners of the vessel in 1804; and there was no exchange of the register, or any record of a transfer of the property by them, until the fall of 1807. Yosburgh purchased the vessel of the defendants in 1805 ; and it was delivered to him before the plaintiffs sold the sails; but by the terms of the contract between Yosburgh and the defendants, the purchase money was to be paid by instalments at different periods; and a formal bill of sale was not to be executed and delivered, until the payments were completed. The vessel was to be, and was, in fact, immediately delivered to him; and he used her for his own exclusive benefit: and in 1807, the consideration ""'money having been paid, a regular bill of sale was given. The court held, that the defendants were not liable, on two grounds; 1. Because the property of the vessel was not in them, when the sales were sold to the master; and, 2. Because the credit was given to the master.
So, in Leonard & M‘Cartee v. Huntington and others, the action was brought for work and labor and supplies, in repairing a vessel, against the defendants as owners; and it appeared that the register of the vessel was in their names; that the supplies were furnished in September, 1815; that on the 4th of May preceding, Huntington had sold the vessel to one Bingham, for 6,300 dollars, payable at different periods; and he was, by the contract, to give him a bill of sale of the brig, when the consideration money was paid. That was not wholly paid until the 4th of October, 1815; and on that day the bill of sale was executed, and the contract consummated. The repairs were ordered by Bingham; and, it will be perceived, were furnished before the bill of sale was delivered. Yet the defendants were held not to be responsible as owners.
These cases settle two points: 1. That the ownership of a vessel is not determined by the register; (vid. also 14 John. 201;) 2. That a regular bill of sale is not essential to transfer the property in a vessel, so as to exempt *699 the former owners from responsibility for articles furnished to her; but that where the contract for the sale is made, and the vessel delivered to the purchaser, the responsibility of the vendor ceases as owner, although, by the express terms of the contract, he retain the legal title in himself, for the purpose of securing the consideration money, until it is paid.
The same principles are recognized in Reynolds v. Toppan, (15 Mass. Rep. 370.)
The only difference between the cases stated, and the one at bar is, that, in this ease, it was agreed that the purchaser should pay for the vessel as fast as he could earn the money with the vessel. In the other cases, *the time of payment was fixed, without any reference to the earnings of the vessel. But I do not perceive how this can vary the case. It did not make the vendors partners with the vendee. They were not to share the profits of the vessel; nor did they acquire, by that stipulation, a lien upon her earnings, or a right to interfere- with, or control her operations. It was a mere stipulation, on the part of the vendors, that they should wait for their pay until the vendee could make it out of the vessel.
But at all events, it could amount to no more than a mortgage of the vessel; and it is well settled that the mortgagee of a ship, out of possession, is not liable for her supplies. (M'Intyre v. Scott, 8 John. 159. Jackson v. Vernon, 1 H. Bl. 117, and Chinnery v. Blackburne, id. note (a).[1]
*700 The plaintiffs knew that Acker was carrying on business in his own name, and on his own account. They dealt with him, therefore, as owner and principal; not as *700-1 maste* and agent. This is conclusively established by the fact of their purchasing a note, for the purpose of turning it out in payment for the freight of their hay. If he was merely the master of the vessel, the freight would not belong to him, but to the owners ;(a) and his individual debt could not be set off against it. All the cases lay great stress upon the circumstance of the credit having been given to some other person than the defendant in the action. And where the credit is given to the real owner of a vessel, although, stricti juris, the title may be in another, that other will never be held responsible. This appears by the cases already cited, to which may be added Walter v. Brewer, (11 Mass. Rep. 99,) and Farmer v. Davies, (1 T. R. 108.)
The charge of the judge was, therefore, erroneous; and a new trial must be granted.
.New trial granted.

 Upon this question, Mi’. Kent, (3 Com. 134, et seq.,) remarks:—“ It has been a disputed question, whether the mortgagee of a ship, before he takes possession, be liable to the burdens, and entitled to the benefits belonging to the owner. In the case of Chinnery v. Blackburne, (1 H. Blacks. Rep. 117, note,) it was held by the K. B. that the mortgagor in such a case, and not the mortgagee, was to be deemed owner, and entitled to the freight, and liable for the repairs and other expenses. The same decision was made by the C. B. in Jackson v. Vernon, (1 H. Blacks. Rep. 114.) But Lord Kenyon, in Westerdell v. Dale, (7 Term. Rep. 306,) entertained a different opinion, and he considered the mortgagee, whether in or out of possession, to be the owner, and - entitled to the freight, and bound for the expenses of tbs ship. The weight of our American decisions, has been in favor pf the position, that a mortgagee of a ship out of possession is not liable for repairs or *700 necessaries procured on the order of the master, and not upon the particular credit of the mortgagee, who was not in the receipt of the freight; though the rule is otherwise when the mortgagee is in possession, and the vessel employed in his service. M'Intyre v. Scott, 8 Johns. Rep. 158. The case of Fisher v. Willing, (8 Serg. & Rawle, 118,) has a strong bearing in favor of the decisions which go to charge the mortgagor: for it was held that a mortgagee of a ship at sea did not, merely by delivery of the documents, acquire such a possession as to be liable to the master for wages accruing after the date of the mortgage. The contract was with the mortgagor, and there was no privity between the master and the mortgagee, before possession taken, sufficient to raise an assumption. A similar decision was made by Ch. J. Abbott, in Martin v. Paxton, and cited in the Pennsylvania case. The case of The Mohawk Insurance Company v. Eckford, decided in the Court of Common Pleas, in the city of New York, in 1828, and the cases of Thorn v. Sicks, and Lord v. Ferguson, (7 Cowen’s Rep. 697,) show that the rule is considered to be settled in New York and New Hampshire, that a mortgagee out of possession is not liable for services rendered, or necessaries furnished <o a vessel, on the credit of the mortgagor, or other person having the equitable title. The question seems to resolve itself into the inquiry, whether the circumstances afford evidence of a contract, express or implied, as regards mortgagees not in possession. If the claimant dealt with the mortgagor solely as owner, he cannot look to the mortgagee. To whom was the credit given, seems to be the true ground on which the question ought to stand. Baker v. Buckle, 7 J. B. Moore, 349. In a case before Lord Ellenborough, in 1816, (Twentyman v. Hart, 1 Starkie’s Rep. 336,) he rifled, that a mortgagee not in possession, and not known to the plaintiSj was not liable for stores supplied by the captain’s order. The weight of authority is decidedly in favor of the mortgagee, who has not taken in possession; and if he has left the possession and control of the ship to the mortgagor, he will not be liable to the master for wages or disbursements, or to any other person for repairs and necessaries done or supplied by the master’s order, where the mortgagor has been treated as owner. If, however, there has been no such dealing with the mortgagor in the character of owner, but the credit has been given to the person who may be owner, it is a point still remaining open for discussion, whether the liability will attach to .the beneficial or to the legal owner. The principle of the decision in Trewhella v. Bow, (12 East’s Rep. 435,) was, that a vendee of a ship, whatever equitable title might exist in him, was not liable for supplies furnished before the legal title was conveyed to him, and registered in the manner prescribed by the registry acts, and when he was unknown to the tradesman who supplied the materials.
“ There are analogous cases which throw light upon this subject. Thus, in Young v. Brander, (East’s Rep. 10,) the legal title remained for a month after the sale in the vendor upon the face of the register, because the vendee had omitted to comply with the forms prescribed by the registry acts. *700-1 But it was held, that he was not liable during that interval for repairs ordered by the captain, under the direction of the vendee, and who had no authority, express or implied, from the legal owner. The vendee ordered the repairs in his own right, and there was no privity of interest between him and the legal owner, and the credit was actually given to the vendee. So, again, the regular registered owner of a ship was held not to be liable for supplies furnished by order of the charterer, who. had chartered the ship at a certain rent for a number of voyages. The owner had divested himself, in that case, of all control and possession of the vessel during the existence of the charter-party, and he had no right under it, to appoint the captain. Frazer v. Marsh, 13 East’s Rep. 238. The question in these cases is, whether the owner, by reason of the charter-party, has divested himself of the ownership pro hae vice, and whether there has been any direct contract between the parties, varying the responsibility.”

 Vid. Ingersoll v. Van Bokkelin, ante, 670.