JOSEPH URANN *vs.* HENRY W. FLETCHER.

The owner of a vessel let her, " with the exception of the necessary room for the accommo dation of the crew, and stowage of the sails, cables and provisions," to the master and another person, for a particular voyage, by a charter party, in which the owner covenanted to keep the vessel tight, staunch and strong, and sufficiently tackled and apparelled for the voyage, and the charterers covenanted to victual and man the vessel, and to pay all port charges and pilotages. *Held*, that the general owner was not liable for water casks furnished to the vessel on the order of the master, though part of the necessary apparel of the vessel for the voyage.

ASSUMPSIT for seven dollars and forty cents, the price of two water casks sold to the barque Emma Isidora and owner.

At the trial in the court of common pleas, before *Hoar*, J. the plaintiff gave in evidence a charter party under seal, made at Bos-ton on the 18th of October 1843, " between Henry W. Fletcher, owner of the good barque Emma Isidora, now lying in the harbor of Boston, whereof Gideon S. Holmes is at present master, on the first part, and Hezekiah Chase and Gideon S. Holmes on

11*

the second part," the material parts of which are as follows : " The said Henry W. Fletcher, for the consideration hereafter mentioned, hath letten to freight the whole of the aforesaid barque with the appurtenances to her belonging, with the exception of the necessary room for the accommodation of the crew, and stowage of the sails, cables and provisions, for a voyage to be made by the said Chase and Holmes from this port to Cape Town, Cape of Good Hope, with liberty of going to ports on the east coast of Africa, and also at liberty to touch at ports in Brazil, and back to Boston, where she is to be discharged, the dangers of the seas excepted. And the said Henry W. Fletcher doth by these presents covenant and agree with the said H. Chase and G. S. Holmes, in manner following, that is to say, that the said barque, in and during the voyage aforesaid, shall be tight, staunch and strong, and sufficiently tackled and apparelled with all things necessary for such a vessel and such a voyage ; and that it shall and may be lawful for the said Chase and Holmes, or their agents or factors, to load and put on board said barque loading of such goods and merchandise as they shall think proper, contraband goods excepted." The said Chase and Holmes then covenant to provide the necessary cargoes, to pay the charter or freight money at the rate of $374.50 a month, to victual and man the vessel, and pay all port charges and pilotages.

The plaintiff then put in his books of account, supported by his suppletory oath, tending to show a sale and delivery of " two water casks to the Emma Isidora " on the 24th day of October 1843, on the order of the master, Gideon S. Holmes. There was testimony tending to show that the two water casks supplied by the plaintiff were needed to make out the vessel's complement of water casks for the voyage described in the charter party ; that Holmes gave directions to the plaintiff to cooper the water casks on board, and gave other directions about the equipment and rigging of the vessel ; that the defendant subsequently paid the plaintiff's bill for coopering the water casks, and that the defendant saw the two water casks in question on board, and inquired and was told where they were obtained ;

and that on the return of the vessel to Boston from her said voyage the two casks were put on shore.

The court instructed the jury, that where a vessel is chartered, so that the control of the vessel for the voyage is wholly given up to the charterer, as in the present case, the captain is not by virtue of his office the agent of the general owner; and in the home port, has no authority to purchase supplies on the credit of the general owner, although the articles purchased may be such as by the terms of the charter party the owner was bound to provide.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions to this instruction.

*F. W. Sawyer*, for the plaintiff.

*C. F. Simmons*, for the defendant.

SHAW, C. J. This suit is brought for a very small amount; but it depends on a very important principle, though one which we think very well settled. We assume that the casks were ordered by the master, because it is so argued on both sides, though it may be well doubted whether the plaintiff's entry in his account book is competent evidence of that fact. The defendant was the general owner of the barque; but at the time the casks were ordered and furnished, she was chartered to the master himself and one Chase, for a voyage described, at a fixed rate in money per month; the owner to have the vessel and her appurtenances in good condition, and to keep the vessel tight, staunch and strong, during the voyage; the charterers to victual and man the vessel, and pay all port charges and pilotages.

The simple question in the present case is this; on whose credit did the plaintiff furnish these articles? The plaintiff's counsel cited *Rich* v. *Coe*, Cowp. 636, to show that he who supplies a vessel with necessaries has not only the security of the master and owners, but also of the specific ship. This case has been greatly modified and limited in its generality by subsequent cases. *Westerdell* v. *Dale*, 7 T. R. 312. Abbott on Ship. 143. It is now well settled, that one who has supplied materials or necessaries for a vessel, in a home port, has

no lien on the vessel therefor. *Ex parte Bland*, 2 Rose, 91. *The General Smith*, 4 Wheat. 438.

But there being here no question of lien, we are to look at the other question, to see who, under given circumstances, is personally liable. The case of *Rich* v. *Coe* says the owner. But as explained and stated in subsequent cases, this does not mean the general owner, absolutely and under all circumstances; but the owner for the voyage, the person on whose account, for whose benefit, and by whom, she is employed and navigated for the time being. In general, a master carries with him the implied authority of the owner to procure repairs, supplies and necessaries, for the vessel, because he is the agent of the owner, appointed and paid by him, managing and conducting the vessel under his orders and for his benefit. This brings the case within the usual, well known, common law doctrine of agency. Where an authorized agent orders goods for his principal, the principal becomes bound; the goods are sold on his credit. But where the vessel is let out by the general owner to others, and the possession, management and control are surrendered to them, for a term of time or for a particular voyage or enterprise, they to victual and man the vessel, (and manning implies the engagement and employment of master, officers and seamen,) then the relation of agent and principal does not subsist between the actual master and the general owner; and if the master orders supplies and necessaries, it is not done by the implied authority, and of course not on the credit, of the general owner. There may be difficulties, under particular circumstances, in determining whether the charter, lease or temporary transfer is of such a character, as to divest the general owner of the possession and management, and vest them in the charterer or lessee, so as to make the latter owner for the voyage, against the first and general presumption, that the general owner is owner for the voyage. The ownership of the vessel may be *prima facie* evidence that the master is his agent; but it is nothing more, and may be controlled by evidence that the master giving the order is in fact agent for others, or acting in his own right. *Young* v. *Brander*, 8 East, 10. *Frazer* v. *Marsh*, 13 East, 238. *Briggs*

v. *Wilkinson*, 7 B. & C. 30. This point has been established by many English cases ; we will cite but one more. It was the case of a suit for repairs on a steam vessel, ordered by the master, the vessel having been let by the registered owners, for a term of time, the general owners having contracted to keep the engine in repair, and the engineers to be appointed by them, the charterer himself acting as master. The contract being made by the master, for repairs, other than those of the engine, it was held that the owners were not answerable. *Reeve* v. *Davis*, 1 Ad. & El. 312. The same rule has been repeatedly declared in this country. *Leonard* v. *Huntington*, 15 Johns. 298. *Thorn* v. *Hicks*, 7 Cow. 697. *Hussey* v. *Allen*, 6 Mass. 163. *Reynolds* v. *Toppan*, 15 Mass. 370. *Taggard* v. *Loring*, 1 Mass. 336.

Without pursuing the general inquiry further, it is only neces sary to look at the charter party in this case, to ascertain whether the charterers had become owners for the voyage. We think all the circumstances concur, which are relied on as tests, to show that this charter was a complete transfer of the posses- sion and control of the vessel for the time being. The entire vessel was let to the charterers, for a particular voyage, at a pecuniary rent per month. The charterers were to victual and man the vessel, and therefore to appoint the master and officers and engage the crew; these were all employed and paid by them, were in their service, and subject to their orders. One of the charterers was himself master, and actually ordered the arti- cles from the plaintiff.

Two circumstances are relied upon by the plaintiff, to take the case out of the rule. One is, that the entire vessel was not let, but a portion of the capacity of the vessel was reserved and excepted as " necessary room, for the accommodation of the crew, and the stowage of the sails, cables and provisions." This extract is from the printed part of a form of charter party, mani- festly adapted to another species of contract of charter, where the owners are to victual and man the vessel. This circum- stance, however, affords no reason why this clause should not form part of the instrument, as if the words were written ; and

Urann *v.* Fletcher.

it is mentioned only to account for its being in the instrument. But the clause, though in form an exception, is in legal effect inoperative. The charterers are to victual and man the vessel, and of course must take room enough for provisions, and for the accommodation of the crew. So they are to navigate the vessel at their own expense, and the reservation of room for sails and cables is for their own use. The whole vessel therefore was placed at the disposal of the charterers, and the owner reserved nothing for himself.

The other consideration relied on by the plaintiff is, that the defendant covenanted with the charterers that, during the voyage, the vessel should be tight, staunch and strong, and sufficiently tackled and apparelled with all things necessary for such a vessel and voyage ; and that water casks were a part of her necessary apparel. But the answer is, this was a mere executory contract between other parties, of which the plaintiff could not avail himself; the paper contained no authority to the master to procure articles even of necessity, on the credit of the owner, and the relation of the parties carried no such implied authority. The effect of such a stipulation on the part of the owner was, that if the charterers, in the course of the voyage, should be obliged to make necessary repairs, and obtain supplies for the vessel, they would be enabled by this covenant to hold the owner to reimburse them, by way of set-off or otherwise.

The court are therefore of opinion, that the defendant was not owner for the voyage, the master was not his agent, and the directions of the court of common pleas were right.

*Exceptions overruled.*