AMERICAN CAR & FOUNDRY CO. *v.* BRASSERT

No. 623. Argued March 23, 1933.—Decided May 8, 1933

Messrs. *Leonard F. Martin* and *Paul R. Conaghan,* with whom Messrs. *Noah A. Stancliffe* and *John R. Cochran* were on the brief, for petitioner.

*Mr. Lewis C. Jesseph,* with whom *Mr. William Rothmann* was on the brief for respondent.

Mr. Chief Justice Hughes delivered the opinion of the Court.

Petitioner, American Car and Foundry Company, a manufacturer of gasoline propelled yachts and cruisers,

made a conditional sale of a cruiser to respondent. While respondent was cruising in the vessel on the waters of Lake Michigan an explosion occurred midship, fire followed, and the vessel became a total wreck and in consequence lay sunken and worthless. Alleging these facts, that respondent and other persons with him on the vessel had been injured, and that respondent's personal effects, as well as the vessel, its machinery, equipment and supplies, were a total loss, and that all the alleged injuries and damages were occasioned and incurred without its privity or knowledge, petitioner filed this libel against respondent seeking limitation of liability under the Act of March 3, 1851, c. 43, § 3. 46 U.S.C. 183. Respondent filed exceptions upon the ground that the libel did not disclose that libellant was the owner of the vessel or engaged in maritime commerce, or any facts sufficient to show that libellant was entitled to the limitation. The District Court dismissed the libel and the Circuit Court of Appeals affirmed the decree. 61 F. (2d) 162. This Court granted certiorari.

The libel disclosed that the sole relation of petitioner to the cruiser was that of manufacturer and vendor under a contract of conditional sale. Respondent gave his order for the cruiser to be delivered on the terms stated and subject to warranty against "defects in workmanship and material" which by its terms was limited to replacement of parts. The order was followed by a "conditional sale agreement," by which respondent acknowledged receipt of the boat in good condition and which provided for the payment of the balance of the purchase price within ninety days after delivery and that, until such payment or tender, title to the boat should remain in the seller. Subject to the conditions of the agreement, the purchaser was entitled to the possession and use of the boat with the right on the part of the seller to retake it and its equipment in case of the purchaser's default. The purchaser

was required to keep the boat insured with full marine coverage, to pay all taxes and charges, to comply with all applicable laws, and to hold the seller harmless from all "liability, claim, demand, cost, charge and expense in any way imposed upon or accruing to seller" by reason of the use or operation of the boat. The libel alleged that the vessel when delivered to respondent was "sturdy, safe and seaworthy." The cause of the accident, except as above stated, is not shown. It appears to have occurred prior to any default on the part of respondent and while he was operating the vessel on his own behalf. The libellant, while proceeding directly against respondent, sought limitation against all claims.

The statute [1] limiting the liability of shipowners was enacted to encourage investments in ships and their employment in commerce. That purpose embraced, as petitioner insists, the promotion of shipbuilding, but it was not concerned with construction as a mere enterprise of manufacture, which itself was not a maritime activity (*People's Ferry Co.* v. *Beers,* 20 How. 393, 402; *Edwards* v. *Elliott,* 21 Wall. 532, 554, 557; *Thames Towboat Co.* v. *The Francis McDonald,* 254 U.S. 243, 244), but with the promotion of commerce and the encouragement "of persons engaged in the business of navigation," to the end that the shipping interests of this country might not suffer in competition with foreign vessels. *Moore* v. *American Transportation Co.,* 24 How. 1, 39; *Norwich Co.* v. *Wright,* 13 Wall. 104, 121; *The Main* v. *Williams,* 152

---

[1] "The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity, or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." R.S. 4283, 46 U.S.C. 183.

U.S. 122, 131; *Evansville & B. G. Packet Co.* v. *Chero Cola Co.*, 271 U.S. 19, 21; *Hartford Accident Co.* v. *Southern Pacific Co.*, 273 U.S. 207, 214; *Flink* v. *Paladini*, 279 U.S. 59, 62. The statute embodied the principle of the general maritime law that shipowners should not "be liable beyond their interest in the ship and freight for the acts of the master and the crew done without their privity or knowledge." *Butler* v. *Boston Steamship Co.*, 130 U.S. 527, 549. The liability thus limited is an imputed liability; it is a liability imputed by law by reason of the ownership of the vessel. For his own fault, neglect and contracts the owner remains liable. *Richardson* v. *Harmon*, 222 U.S. 96, 103, 106; *Pendleton* v. *Benner Line*, 246 U.S. 353, 356.

Petitioner retained title solely for the purpose of securing the purchase price of the vessel, and prior to default in payment, petitioner had no control over the vessel's operation. Petitioner did not man or operate her, and had no right to do so. For all purposes of use in navigation the vessel belonged to respondent. In these circumstances, petitioner was not liable as owner for acts of respondent or for those of the master and crew. It is well settled [2] that a mortgagee out of possession, and not exercising authority, is not answerable for the acts of the master or other agent of the ship. See *Morgan's Assignees* v. *Shinn*, 15 Wall. 105, 110; *McIntyre* v. *Scott*, 8 Johns. 159; *Macy* v. *Wheeler*, 30 N.Y. 231; *Brooks* v. *Bondsey*, 17 Pick. 441; *Davidson* v. *Baldwin*, 79 Fed. 95; *Calumet & Hecla Mining Co.* v. *Equitable Trust Company*, 275 Fed. 552; Parsons on Shipping and Admiralty, 129, *note;* Abbott, Merchant Ships and Seamen, 14th ed., p. 55. The same is true of a vendor who retains title as

---

[2] Compare *Jackson* v. *Vernon*, 1 H.Bl. 114; *Westerdell* v. *Dale*, 7 Term Rep. 306; *Mitcheson* v. *Oliver*, 5 El. and Bl. 419; *Tucker* v. *Buffington*, 15 Mass. 477.

security for the payment of the purchase price. See *Philips* v. *Ledley*, 1 Wash.C.C. 226; Fed. Cas. No. 11,096; *Wendover* v. *Hogeboom*, 7 Johns. 308; *Leonard* v. *Huntington*, 15 Johns. 298; *Thorn* v. *Hicks*, 7 Cow. 697; *Jones* v. *Pitcher*, 3 Stewart 135; *Hemm* v. *Williamson*, 47 Ohio St. 493; 25 N.E. 1; *The Boise Penrose*, 22 F. (2d) 919, 920; *The John E. Berwind*, 56 F. (2d) 13. The principle, generally recognized, was thus emphatically stated in *Thorn* v. *Hicks, supra:* " The mere circumstance of the naked legal title to the vessel " remaining in the vendors " to secure the purchase money for which she had been sold, unquestionably would not render them liable as owners, on the contracts of the master, or for the consequences of his negligence and unskilfulness."

What, then, is the liability which petitioner seeks to limit? It is manifestly not a liability imputed to petitioner as shipowner. With respect to respondent, the mere fact that petitioner retained the legal title to the vessel, in order to secure the payment of the remainder of the price, neither created liability for the injury alleged to have been sustained on account of the explosion nor conferred immunity. If such liability existed, it arose not because petitioner reserved title, while delivering possession and control of use, but because it was manufacturer and vendor. The question of liability would be determined with reference to the obligations which were expressly assumed by the vendor, or were inherent in the transaction, irrespective of the title retained as security. Similarly, as to other persons who are alleged to have suffered injury from the accident—the possible claimants described in the libel—petitioner's liability, if any, had no relation to any responsibility of petitioner as holder of the naked title, but would depend upon petitioner's conduct as maker of the vessel, that is, upon the question whether in the circumstances petitioner could be held

guilty of actionable neglect in its manufacture. See Bohlen, "Studies in the Law of Torts," pp. 109 *et seq.; MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382; 111 N.E. 1050. That question is not before us. Whatever liability there may be in that aspect, either to respondent or to others, it is not a liability falling within the policy and purview of the Act of Congress limiting the liability of shipowners.

*Decree affirmed.*