MEDITERRANEAN SHIPPING COM-
PANY S.A. GENEVA, Third–Par-
ty–Defendant–Appellant,

v.

POL–ATLANTIC, Defendant–Third–
Party–Plaintiff–Cross–Defendant–
Appellee,

Atlantic Container Line AB,
Defendant–Third–Party–
Plaintiff–Appellee,

Schreiber Foods International Inc., The Channel Corporation, Louis Dreyfus Corporation, Domus Design Center, Inc., A.S.I. Stone Imports, Inc., Eaton Corporation, Thomson Consumer Electronics, Inc., Tupperware Corporation, Tyfield Importers, Inc., Coach Leatherware Company, Inc., Mascotech Forming Technologies, Mattel, Inc., Catherine Cole, Mme., Comaro USA Inc., V & S Vin & Spirit, L'oreal Group, De Longhi S.P.A., Philips Corp., De Vitrite Fabriek B.V., Goodmark Aerosol Company Limited, Aston Martin Lagonda Limited, Ikea Wholesale, Inc., J. Baker, Inc., Air Express International, Inc./Radix, France Voiles Co., Inc., The Rockport Company, Inc., Caterpillar, Inc., Raytheon Marine Company, Med USA Corp., McCormick & Company, Inc., Syratech Inc., Brown–Forman Corp., Thomas Allraum, Anderson Courts and Sports Surface, Inc., Associated Merchandising Corp., William Buttrum, Extra Plastic Ltd, Gadot Bio–Chem Inc., Mr. Gallagher, CRP Industries, Inc, Mrs. Juliette Habib, Mr. Rains, Mrs. C. Rains, Ms. Elizabeth Sands, Skyway International Freight Forwarders Ltd., Vicksburg Chemical Corporation, Woodway Darts & Supplies, Inc., Mr Uday Yadav, Dart Mart, Inc., YMT International, Inc., Plaintiffs,

Ocean World Lines, Inc., Defendant–
Cross–Claimant,

Hyundai Merchant Marine Co.,
Ltd., Cross–Defendant,

Mariteam S.A., Cross–Claimant,

Intercargo Napoli SRL, Otim Spa Milan, A.L.S. SRL, Denesi Spendizioni, SRL, Circle International Limited, Albatrans S.R.L., Arimar Spedizioni, SRL, Euroship Lines, Cargo Specialists International Inc., Panalpina Transports International, Mariteam S.A., Logfret Logistique Fret SA, Expeditiors International Ocean, Danmar Lines Ltd, Trans World Shipping Limited, Logfret Inc., Cargoline (USA) Inc., Savitransport S.P.A., Kamden International Shipping, Ltd., Schenker International Deutchland GMBH, Savino Del Bene SPA Treviso, Roco Freight Services, Procon Express Lines, Concord Logistics (UK) Ltd, Defendants.

No. 99–7222.

United States Court of Appeals,
Second Circuit.

Argued: Dec. 6, 1999
Decided: Oct. 13, 2000

Vincent M. De Orchis, De Orchis, Walker & Corsa LLP, New York, N.Y. (John A. Orzel, Marc I. Kunkin, Of Counsel), for Third–Party–Defendant–Appellant Mediterranean Shipping Co. S.A. Geneva.

Stephen H. Vengrow, Cichanowicz Callan Keane Vengrow & Textor LLP, New York, NY, for Defendant–Third–Party–Plaintiff–Cross–Defendant–Appellee POL–Atlantic and Defendant–Third–Party–Plaintiff–Appellee Atlantic Container Line AB.

Before: WALKER, Chief Judge, CABRANES and PARKER, Circuit Judges.

PARKER, Circuit Judge:

This case concerns the appeal from the January 26, 1999 memorandum and order of the United States District Court for the Southern District of New York (Richard Owen, Judge), denying the motion of Third–Party–Defendant–Appellant Mediterranean Shipping Company S.A. Geneva ("MSC") to stay all third-party claims or legal actions by Defendants–Third–Party–Plaintiffs–Appellees POL–Atlantic and Atlantic Container Line AB ("POL" and "ACL," respectively, or the "slot charterers," collectively) pending London arbitration pursuant to the terms of a Vessel Sharing Agreement ("VSA") between the parties and pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.

On appeal MSC argues that the district court improperly denied its motion to compel arbitration. We hold that the district court erred in concluding that concursus under the Limitation of Shipowners' Liability Act (1851) (the "Limitation Act" or

the "Act"), 46 U.S.C. app. § 181 et seq., applies to the third-party claims at issue here and that it provided a justification for denial of MSC's motion. Therefore, we vacate the district court's decision and remand for further proceedings.

## I. BACKGROUND

The facts of this case are described in detail in the district court opinion, *Schreiber Foods International, Inc. v. Intercargo Napoli S.R.L.*, No. 98 CV 5954, 1999 WL 33469 (S.D.N.Y. Jan.26, 1999); they are briefly as follows. In November 1997, the 289–meter M/V MSC Carla (the "Carla") departed from Le Havre, France on a westbound voyage to the United States. The vessel encountered heavy weather on November 24, 1997 and broke in half. The bow section sank with all its cargo; the stern continued to float and ultimately was towed to safety with its crew and cargo.

MSC is the bareboat charterer[1] and vessel operator of the Carla. POL and ACL are slot charterers[2] of the vessel. MSC, POL, and ACL are all ocean carriers which operate services between Europe and the United States. Pursuant to the VSA, which is a charter party[3] entered into by MSC, POL and ACL, the slot charterers (POL and ACL) placed containerized[4] cargo on board the Carla for shipment by MSC. The cargo was moved for cargo owners under separate bills of lading issued by POL and ACL to the cargo owners. Because the cargo was destroyed, the cargo owners had the right to bring claims against the bill of lading issuer or the vessel operator, or both, under the United States Carriage of Goods by

---

1. Under a "bareboat" charter, "the charterer takes complete control of the vessel, mans it with his own crew, and is treated by law as its legal owner." 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 11–1, at 169 (2d ed.1994) (footnote omitted).

2. Slot charterers reserve a certain number of container slots on a ship owned by another party.

3. A charter party is a contract by which a vessel is leased by the owner (or bareboat charterer in this case) to charterers (here, subcharterers) for the conveyance of goods. *See* 2 Schoenbaum, *supra*, § 11–1, at 169.

4. Cargo is shipped in a number of large containers which are loaded on board the vessel. *See id.* § 10–4, at 16.

Sea Act, 46 U.S.C. § 1300 *et seq.* ("COGSA"). However, the VSA is not subject to COGSA. According to the VSA's terms, POL and ACL, as the bill of lading issuers, must appear and defend all cargo claims. MSC, the vessel operator, is required to cooperate with POL and ACL in this defense.

■ Following the casualty, on December 9, 1997, the vessel's owner, Rationis Enterprises, Inc., and MSC filed a Petition or Complaint for Exoneration from or Limitation of Liability (the "limitation proceeding") in the United States Court for the Southern District of New York, pursuant to the Limitation Act and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. The limitation proceeding, *In re Complaint of Rationis Enterprises, Inc.*, No. 97 CV 9052(RO) (S.D.N.Y. filed Dec. 9, 1997), brings together nearly 1,600 claims filed by cargo owners and their underwriters (collectively, the "cargo interests") against MSC. Under the Limitation Act a shipowner (or its equivalent, including a bareboat charterer) is entitled to limit its liability to the value of the vessel after the incident, plus "freight then pending," [5] should exoneration (discussed *infra*) be denied.[6] *See* 46 U.S.C. app. § 183; 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 15–7, at 314 (2d ed.1994). The Act provides for a "concursus" [7] whereby all claims against a shipowner are brought "into concourse in an admiralty tribunal." *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 414, 74 S.Ct. 608, 98 L.Ed. 806 (1954); *see* 2 Schoenbaum, *supra*, § 15–5, at 310. The Limitation Act is described in greater detail below.

The cargo interests also filed lawsuits (collectively, the "cargo actions"), from which this appeal arises, outside the limitation proceeding against POL and ACL (and other carriers), who as slot charterers are not entitled to limit their liability under the Limitation Act. On September 10, 1998, POL and ACL filed in the cargo actions third-party complaints pursuant to Rule 14(c) of the Federal Rules of Civil Procedure seeking indemnity from MSC (the "third-party indemnity claims") for the claims filed against them, on the ground that the losses occurred while the vessel was solely under MSC's control. POL and ACL moved on September 28, 1998 to consolidate the cargo actions with the limitation proceeding. On October 7, 1998, MSC moved to stay the third-party indemnity claims brought against it by POL and ACL pending London arbitration [8] pursuant to the VSA. The district court denied MSC's motion, and granted POL and ACL's motion to consolidate the cargo actions with the limitation proceeding for discovery purposes. *See Schreiber*, 1999 WL 33469, at *3. MSC appealed the denial of its motion.

In the limitation proceeding MSC may be exonerated from all liability if the court finds that cargo loss was due to certain factors, including Act of God, Peril of the Sea, or latent defect of the vessel not discoverable through due diligence. *See* 46 U.S.C. § 1304. If MSC is not entitled to exoneration, the court will determine whether MSC is entitled to limit its liability under the Limitation Act. The slot charterers are not protected under the Limitation Act, which protects only vessel owners and bareboat charterers. *See* 46 U.S.C.

---

5. "Freight then pending" means the total earnings of the vessel for the voyage, including charges for carriage of cargo and passengers. *See* 2 Schoenbaum, *supra*, § 15–7, at 314.

6. According to MSC, the value of the limitation fund is approximately $3.265 million; there are more than $130 million in claims. *See Schreiber Foods*, 1999 WL 33469, at *2.

7. Concursus may be very generally understood as a concept where numerous claimants to a single fund have an opportunity to litigate over their share of the fund in a single lawsuit. *See* 2 Schoenbaum, *supra*, § 15–6, at 310.

8. POL, ACL, and MSC had earlier requested arbitration (on September 24 and 28, 1998).

app. §§ 185, 186. As slot charterers, POL and ACL are thus liable for losses due to fault or negligence.

MSC contends that any claims by POL and ACL to recover from MSC must be asserted in London arbitration, pursuant to the VSA's arbitration clause, which reads as follows:

23. *Law and Arbitration:*

This Charter Party shall be governed by and construed in accordance with laws of England.

Any dispute or claim arising out of or in connection with this Charter Party shall be referred to arbitration under the International Arbitration Rules of the London Court of International Arbitration (LCIA), providing not less than 60 day's notice of intention to refer the matter to arbitration, specifying the nature of the dispute or claim, shall have been delivered in writing to the other party(ies). The parties agree to exclude any right of appeal with respect to any award made therein.

POL, ACL, and MSC separately requested arbitration in letters exchanged among the parties between September 24, 1998 and September 28, 1998. However, ACL and POL demanded arbitration to protect their interests in the event the district court dismissed their third-party indemnity claims against MSC, indicating that they would withdraw their arbitration demands if the district court consolidated the cargo actions with the limitation proceeding. In November 1998, the High Court of Justice, Queen's Bench Division, permitted ACL and POL "to continue their preparations in respect of MSC's application to stay the Third Party Complaints against MSC in the United States District Court for the Southern District of New York" (the limitation proceeding). J.A. 265.

The district court below denied MSC's motion to arbitrate pursuant to the VSA, concluding that "federal policy favoring concursus takes precedence over arbitra-tion at this stage of the case." *Schreiber Foods,* 1999 WL 33469, at *2. The court reasoned that our decision in *The Quarrington Court,* 102 F.2d 916, 918 (2d Cir. 1939), should be read to preclude MSC's motion, at least at this point in the proceedings. The district court quoted *Quarrington Court,* which stated that "[t]he purpose of a limitation proceeding is not merely to limit liability but to bring all claims into concourse and settle every dispute in one action." *Schreiber Foods,* 1999 WL 33469, at *2 (quoting *Quarrington Court,* 102 F.2d at 918).

The district court also relied on Supreme Court precedent, stating:

The Supreme Court has "given the [Limitation Act] a very broad and equitable construction for the purpose of carrying out its purpose, and for facilitating a settlement of the whole controversy over such losses as are comprehended within it, and that all the ease with which rights can be adjusted in equity is intended to be given to the proceeding."

*Id.* (quoting *Hartford Accident & Indem. Co. v. Southern Pac. Co. (The Bolikow),* 273 U.S. 207, 215–16, 47 S.Ct. 357, 71 L.Ed. 612 (1927)). The district court concluded:

While the purpose behind the Federal Arbitration Act is "to ensure judicial enforcement of privately made agreements to arbitrate" and to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," I am concerned here with more than mere judicial economy in the face of the federal policy behind the Limitation of Liability Act's concursus which is in conflict with the arbitration policy.

*Id.* at *3 (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219–20, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)) (citation omitted).

## II. DISCUSSION

On appeal MSC argues that the district court erred in denying MSC's motion to

proceed to arbitration. Alternatively, MSC argues that the district court erred in declining to order POL and ACL's third-party indemnity claims to be brought within the limitation proceeding and thus made subject to the limitation fund. Because we do not agree with the district court that concursus under the Limitation Act applies to the claims at issue here, we vacate the decision of the district court.

This Court has jurisdiction pursuant to 9 U.S.C. § 16, as this is an appeal from an order denying MSC's motion to compel arbitration under the FAA. We review de novo the denial of a motion to stay an action pending arbitration.[9] *See Haviland v. Goldman, Sachs & Co.,* 947 F.2d 601, 604 (2d Cir.1991).

The Limitation Act provides an admiralty procedure "to enjoin all pending suits and to compel them to be filed in a special limitation proceeding so that liability may be determined and limited to the value of the shipowner's vessel and freight pending." 2 Schoenbaum, *supra,* § 15–1, at 299. The limitation proceeding provides a single forum for determining whether the vessel owner is liable, and, if so, for determining whether the owner may limit its liability, assessing the value of the limitation fund and the claims on the fund, and deciding how the fund will be distributed. *See id.* § 15–5, at 305–06.

The owner's liability under the Act is limited as follows:

The liability of the owner of any vessel, whether American or foreign, for any ... loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act ... loss, damage, or forfeiture, ... occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C. § 183(a).[10] The Act thus limits a vessel owner's liability to the value of the vessel and freight pending when the owner is sued "for the acts of the master or crew done without [the owner's] privity or knowledge." *American Car & Foundry Co. v. Brassert,* 289 U.S. 261, 264, 53 S.Ct. 618, 77 L.Ed. 1162 (1933) (internal quotation marks and citation omitted). Privity and knowledge "exist where the owner has actual knowledge, or could have and should have obtained the necessary information by reasonable inquiry or inspection." 2 Schoenbaum, *supra,* § 15–6, at 312. The value of the vessel is determined as of the conclusion of the voyage, after the casualty. *See id.,* § 15–7, at 314.[11]

9. POL and ACL, the slot charterers, argue unpersuasively that "the district court simply adjourned or deferred a determination of the arbitrability of the indemnity claims," so the order appealed from "was actually a calendaring or scheduling order rather than a substantive denial [of] arbitration." They argue, therefore, that our review should be for abuse of discretion. While it is correct that the district court may revisit this issue at a later stage of the proceeding, the order being appealed herein clearly denied MSC's motion to compel arbitration and stay POL and ACL's third-party indemnity claims pending arbitration. *See Schreiber,* 1999 WL 33469, at *3.

10. Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims governs the filing and adjudication of a limitation action. It provides, *inter alia,* requirements for the complaint and a procedure for enjoining the further prosecution of any action or proceeding against the plaintiff with respect to claims subject to limitation.

11. The Limitation Act differs from the law of limitation that applies under English law, which the VSA provides for in its arbitration provision. England has adopted the International Convention on Limitation of Liability for Maritime Claims (the "1976 Convention"); it has not been adopted by the United States. *See* 2 Schoenbaum, *supra,* § 15–1, at 299–300. The limitation fund is greater under the 1976 Convention than under the Limitation Act; it is based on the tonnage of the vessel, rather than the vessel's value after the casualty. *See id.,* § 15–7, at 315. Under Article 4 of the 1976 Convention, the shipowner loses its right to limit its liability only "if it is proved that the loss resulted from its personal act or omission, committed with the intent to

■ Personal contracts entered into by a vessel owner or bareboat charterer are not subject to limitation under the Act.[12] *See American Car*, 289 U.S. at 264, 53 S.Ct. 618 (shipowners entitled to limit liability for acts of master and crew done without their privity or knowledge, but remain liable for own fault, neglect, and contracts); *Richardson v. Harmon*, 222 U.S. 96, 106, 32 S.Ct. 27, 56 L.Ed. 110 (1911) (shipowner entitled to limit liability under Limitation Act for all claims arising out of conduct of master and crew, but remains liable for own fault, neglect, and contracts); *The Nat Sutton*, 62 F.2d 787, 789 (2d Cir.1933) (Limitation Act leaves charterer "liable for his own fault, neglect, and contracts"); *The Loyal*, 204 F. 930, 932–33 (2d Cir.1913) (owner's personal contract is outside limitation statute); 2 Schoenbaum, *supra*, § 15–8, at 318–19. This exception to limitation determines the result we reach here. The personal contract exception prevents shipowners and bareboat charterers from attempting to limit liability that they have contracted to bear. "In application this is an equitable doctrine based on the proposition that a shipowner should not be able to promise an undertaking or performance that was within his personal control and then turn around and limit liability when his performance was faulty." 2 Schoenbaum, *supra*, § 15–8; at 318; *see Richardson*, 222 U.S. at 106, 32 S.Ct. 27. "[T]he test of the personal contract exception is not merely that the shipowner entered into the contract personally, but is whether the obligation (and therefore the breach) was one the shipowner was personally bound to perform, rather than one contemplated he would delegate to his agents and servants." 2 Schoenbaum, *supra*, § 15–8, at 318.

■ When a vessel owner personally warrants the seaworthiness of the vessel, the owner has made a personal contract and is not entitled to limitation under the Act. *See Pendleton v. Benner Line*, 246 U.S. 353, 355–56, 38 S.Ct. 330, 62 L.Ed. 770 (1918) (owners who warranted seaworthiness of vessel to charterer in charter party could not subsequently limit liability under the Act because "the [owner] by his own act knowingly made himself a party to an express undertaking for the seaworthiness of the ship"); *Cullen Fuel Co. v. W.E. Hedger, Inc.*, 290 U.S. 82, 87, 54 S.Ct. 10, 78 L.Ed. 189 (1933) (same); *In re Reliance Marine Transp. & Const. Corp. (The M.J. Woods)*, 206 F.2d 240, 243 (2d Cir.1953) (same); 2 Schoenbaum, *supra*, § 15–8, at 318 ("[T]he shipowner who enters into a charter for his vessel and expressly or impliedly warrants its seaworthiness cannot limit as to the claim of a charterer that the vessel sank because the vessel was unseaworthy at the beginning of the voyage.").

■ The VSA includes such a warranty of seaworthiness here: "The Vessel Operator [MSC] shall be responsible for the seaworthiness of the Containership ... [and] will be responsible for the proper and careful carriage, custody and care of the goods and containers whilst on board the Containership...." Therefore, POL and ACL's third-party indemnity claims against MSC are based on personal contract, and, as such, they are not subject to limitation under the Act. *See American Car*, 289 U.S. at 264, 53 S.Ct. 618; *Pendleton*, 246 U.S. at 355–56, 38 S.Ct. 330; *Richardson*, 222 U.S. at 106, 32 S.Ct. 27; *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 644 (6th Cir. 1982). We hold that the district court's concursus justification for denying MSC's motion was in error because the VSA is a

---

cause such loss, or recklessly and with knowledge that such loss would probably result." 3 Schoenbaum, *supra*, App. D, at 924. Thus, the 1976 Convention "provides for a virtually unbreakable system of limiting liability." 2 Schoenbaum, *supra*, § 15–7, at 315 n.10.

12. The parties recognize this exception to limitation; the slot charters stipulated to it below. *See* Appellees' Br. at 24.

personal contract that, by incorporating MSC's warranty of seaworthiness, takes POL and ACL's third-party indemnity claims against MSC out of the limitation proceeding. Because the claims at issue are not subject to limitation under the Act, the district court's order must be vacated. The policy favoring concursus, which the district court found to override the policy favoring arbitration, is not affected where, as here, the indemnity claims at issue are not subject to the limitation proceeding.

Our conclusion is supported by our decision in *W.E. Hedger Transp. Corp. v. Gallotta*, 145 F.2d 870 (2d Cir.1944) (Learned Hand, C.J.). In *W.E. Hedger*, this Court concluded that there was no concursus justification for marshaling claims brought under a personal contract into a limitation proceeding. Gallotta, a longshoreman injured while working on a barge owned by Hedger Transportation, sued Hedger in state court for personal injuries. Hedger had chartered the barge orally to appellant Manhattan Lighterage, which in turn subchartered it to another company. Hedger filed a petition in federal district court for limitation of liability, and Gallotta consented to limitation and agreed that the value of the barge should be fixed in the federal court. *See id.* at 871. The federal court thereupon vacated a stay of Gallotta's state action, which Hedger had obtained when it filed the limitation petition. *See id.*

Gallotta then joined Manhattan and the subcharterer as defendants in the state action against Hedger, charging them with responsibility for the condition of the barge. Manhattan filed a cross-claim against Hedger seeking to recover on breach of Hedger's covenant of seaworthiness implied in the oral charter. *See id.* Hedger moved in the limitation proceeding to vacate the federal order dissolving the stay of Gallotta's state action, arguing that Manhattan's indemnity claim constituted a second claim against it, making it necessary to bring the two claims into concourse in the limitation proceeding. *See id.*

The *W.E. Hedger* court concluded that the oral charter was a "personal undertaking" in which Hedger warranted seaworthiness to Manhattan, and therefore that the indemnity claim was "not of a kind to be brought into a concourse with Gallotta's claim, and to be tried in the limitation proceeding." *Id.* at 872. "The Manhattan Company's claim is ... [grounded] upon a breach of a warranty of seaworthiness, and, since such a breach is of a personal undertaking of the shipowner, the liability cannot be limited." *Id.* (citing *Pendleton*, 246 U.S. at 353, 38 S.Ct. 330). Consequently, the Court held that Hedger was "liable without limitation for the full amount of any loss which the Manhattan Company may suffer, if the barge was unseaworthy" because "[w]hen the Hedger Company personally assured the Manhattan Company that the barge was seaworthy, it agreed to make good all loss which the charterer might suffer in reliance upon that assurance; and the fact that the Hedger Company's liability to Gallotta, based upon its relation assumed towards him, was limited, had nothing to do with its liability on the warranty." *Id. W.E. Hedger* specifically noted that the limitation fund would not be affected by the indemnity claim because that claim was outside limitation: "The justification for limitation proceedings is that there is a fund to be distributed among several claimants.... The jurisdiction of the admiralty court to adjudicate the merits of the claims is derivative from, and ancillary to, these considerations; it does not extend to a claim which is not subject to limitation." *Id.; accord Kreta Shipping S.A. v. Preussag Int'l Steel Corp.*, 192 F.3d 41, 49 (2d Cir. 1999) (primary purpose of the limitation procedure is to apportion the fund among the eligible claimants); *In re Texas Co. (The Washington)*, 213 F.2d 479, 482 (2d Cir.1954) ("Concourse is to be granted only when ... necessary in order to distribute an inadequate fund. The purpose of limitation proceedings is not to prevent a multiplicity of suits but, in an equitable fashion, to provide a marshalling of assets-

the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." (alteration in original) (internal quotation marks and citations omitted)).

In reaching the opposite conclusion, the district court relied on *The Quarrington Court,* 102 F.2d 916 (2d Cir.1939), which we find distinguishable. In *Quarrington Court,* cargo owners and underwriters sued the owner and the time charterer of a steamship to recover the value of cargo lost after the vessel sank. *See id.* at 917. The time charterer in turn filed a third-party petition impleading the vessel owner for indemnification. *See id.* The owner of the vessel filed a limitation proceeding. The time charterer filed two claims in the limitation proceeding: one for indemnity, and one to recover $75,260, which it claimed it would have earned had the cargo been delivered. *See id.*

The charter party executed by the owner and time charterer contained a warranty by the owner of the vessel's seaworthiness, and an arbitration clause providing for arbitration of any dispute arising between the parties. *See id.* The owner moved in the limitation proceeding to stay all proceedings initiated by the time charterer pending arbitration. *See id.* This Court held that the owner could not proceed to arbitration. *See id.* at 919.

*Quarrington Court* is distinguishable from the instant case for two reasons. First, in *Quarrington Court* this Court concluded that the time charterer's claim for consequential damages was subject to the limitation fund, and that "after the limitation proceeding has begun steps outside of that proceeding which would affect

the fund should not be allowed." *Id.* at 919; *see also In re Nakliyati,* Nos. 87 CV 455(JMM), 88 CV 506(JMM), 1989 WL 128581, at *17 (E.D.N.Y. July 10, 1989) ("The central thrust of the court's reasoning [in *Quarrington Court* ] . . . concerned the potential negative impact on the limitation fund were the English arbitration permitted to proceed, apparently because the issues to be arbitrated involved not only indemnification but also the charterer's claim against the owner for lost freight charges which, if successful, would have affected the division of the limitation fund."). Here, POL and ACL do not make claims for their own cargo losses or lost profits—they seek indemnification if they become responsible for losses incurred by cargo owners. Furthermore, as POL and ACL have stipulated, the well-established personal contract exception applies to remove POL and ACL's claims from the limitation proceeding and, therefore, from the fund.[13]

Second, *Quarrington Court* relied on equitable considerations that do not exist here. The circumstances of the case are not described in detail, but the Court apparently viewed the owner's litigation strategy as inequitable when it concluded that the owner "should be required to adjust its disputes with [the time charterer] in the limitation proceeding and not seek to have two strings to its bow in order that it may invoke limitation or exoneration in the arbitration proceeding under the English law and, if it fails, still seek similar relief under ours." *Quarrington Court,* 102 F.2d at 918. We do not find similar equitable concerns to exist here.[14]

---

**13.** It appears that the parties in *Quarrington Court* did not raise, and hence this Court did not consider, whether the vessel owner's warranty of seaworthiness entitled the charterer to invoke the personal contract exception so as to avoid limitation.

**14.** *Quarrington Court* rests upon the particular circumstances therein and should not be read to preclude an owner from pursuing arbitration under its charter party whenever

it has already filed a complaint seeking limitation. In *Afram Carriers, Inc. v. Moeykens,* 145 F.3d 298 (5th Cir.1998), the Fifth Circuit noted its disagreement with what it considered to be outdated reasoning in *Quarrington Court:*

> The *Quarrington Court* was decided in an era in which forum-selection and arbitration clauses were disfavored by the courts because they were thought to "oust their

# 406

We disagree also with the district court's conclusion that "as to POL and ACL's indemnity claims, there is nothing at this point to be submitted to London arbitration." *Schreiber*, 1999 WL 33469, at *3. Under the VSA the arbitration panel possesses the authority to decide the indemnity questions, and other claims related to that charter party, pursuant to English Law. Under English Law, the arbitration panel "may make a declaration as to any matter to be determined in the proceedings." The English Arbitration Act § 48(3) (1996); Thomas Carbonneau, *A Comment on the 1996 United Kingdom Arbitration Act*, 22 Tul. Mar. L.J. 131, 152 (1997) (Section 48 recognizes arbitrators' authority to issue declaratory relief). Thus, the issue of liability may be resolved in the first instance by London arbitration. Because we conclude that the third-party claims are not subject to the limitation proceeding, we do not credit MSC's alternative argument that the third-party claims should be brought into the limitation proceeding and made subject to the fund.

## III.  CONCLUSION

We vacate the district court's denial of the motion by MSC to stay all third-party claims or legal actions, and we remand to the district court for further proceedings consistent with this opinion. If on remand the district court concludes that the parties agreed to arbitrate within the meaning of the Federal Arbitration Act, and POL and ACL raise no other valid defenses, the

court should grant MSC's motion to stay POL and ACL's third-party indemnity claims and require that such claims be brought before the arbitration proceeding in London. Accordingly, the decision of the district court is VACATED and REMANDED. No costs to either party.

jurisdiction." In those days, nearly any public policy could undo such a clause.... By 1972, the Supreme Court had rejected the "ouster of jurisdiction" notion as parochial. Now, there is a heavy presumption in favor of such clauses....
*Id.* at 303 n. 9 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)); *see M/S Bremen*, 407 U.S. at 9, 15, 92 S.Ct. 1907 (rejecting the ouster of jurisdiction argument and holding that forum selection clauses should control absent a strong showing of unreasonableness, fraud, or overreaching); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528,

537–39, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995) (viewing foreign arbitration clauses as a subset of forum selection clauses, and relying on *The Bremen* in support of its holding enforcing foreign arbitration clause); *see also Dean Witter Reynolds*, 470 U.S. at 219–20, 105 S.Ct. 1238 (Congressional purpose in enacting FAA was to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" on ground of ouster of jurisdiction). As we have indicated, this Court favors agreements to arbitrate; any broad suggestion that *Quarrington Court* may have provided to the contrary should not be relied upon.